CHARTER TOWNSHIP OF PITTSFIELD v CITY OF SALINE

Docket No. 50369. Submitted November 13, 1980, at Lansing.—Decided January 22, 1981. Leave to appeal applied for.

The City of Saline attempted to annex certain adjacent land located in the Charter Township of Pittsfield by resolution of its city council. The township brought an action against the city in Washtenaw Circuit Court, seeking to void the annexation on the grounds that the city was not the owner of the land at the time the resolution of the council was passed and that the parcel was not vacant. The circuit court enjoined the city from exercising any governmental authority over the parcel, and, after considering the parties' stipulated statement of facts, held that the city owned the land in question and that the land was vacant within the meaning of the applicable statute, dissolved its preliminary injunction, and dismissed plaintiff township's complaint, Henry T. Conlin, J. Plaintiff appeals. *Held:*

1. The municipal ownership of land sought to be annexed unilaterally need only extend to those incidents of ownership required to make a city the equitable owner of the property under the provisions of the applicable statute. The trial court properly held the city to be the owner of the property in question.

2. The trial court properly held that the land in question was vacant as required by statute. The mere presence of seasonal

REFERENCES FOR POINTS IN HEADNOTES
[1] 77 Am Jur 2d, Vendor and Purchaser §§ 317, 415.
[2] 77 Am Jur 2d, Vendor and Purchaser § 317.
[3] 73 Am Jur 2d, Statutes § 145.
[4] 73 Am Jur 2d, Statutes §§ 156, 157.
[5] 73 Am Jur 2d, Statutes §§ 206, 321.
[6, 7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 70.
[7] 73 Am Jur 2d, Statutes § 206.
[8] 3 Am Jur 2d, Agriculture § 7.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 68.

crops on the land neither negates the finding of vacancy by the trial court nor bars the city's annexation resolution.

Affirmed.

1. Vendor and Purchaser — Land Contracts — Equitable Title — Legal Title.

A vendee in a land contract is vested with equitable title in the land, and the legal title remains in the vendor as trustee for the vendee as security for payment by the vendee of the purchase price.

2. Vendor and Purchaser — Land Contracts — Real Property — Personal Property.

A contract for the sale of land operates as an equitable conversion; the vendee's interest under the contract becomes realty, and the vendor's interest constitutes personalty.

3. Appeal — Statutory Construction — Rules of Construction.

The Court of Appeals is governed by traditional rules of statutory construction; if a statute is unambiguous on its face, further interpretation or construction will be avoided, but where ambiguity exists, it is the duty of the court to give effect to the legislative intent upon enactment.

4. Statutes — Ambiguous Statutes — Courts — Statutory Construction.

A court, in resolving a perceived ambiguity in a statute, should look to the object of the statute and the evil or mischief which it is designed to remedy and apply a reasonable construction of the statute which best accomplishes its purpose.

5. Statutes — Ambiguous Statutes — Courts — Statutory Construction — Method of Construction.

Ambiguous statutes are interpreted by a court as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result, and specific words in a statute are assigned their ordinary meaning unless a different interpretation is indicated (MCL 8.3a; MSA 2.212[1]).

6. Municipal Corporations — Annexation of Territory — Statutes.

The statute which prescribes the procedures for unilateral annexation of adjacent territory to a city should not be held to require the city to acquire all legal and equitable rights in a parcel of land prior to seeking its annexation but to extend only to those incidents of ownership required to make the city

the equitable owner of the property (MCL 117.9[8]; MSA 5.2088[8]).

7. MUNICIPAL CORPORATIONS — ANNEXATION OF TERRITORY — STATUTORY CONSTRUCTION — WORDS AND PHRASES — STATUTES.

The word "vacant" as used to refer to land to be annexed by a city in the statute which outlines the procedure for unilateral annexation should be given its ordinary meaning where the statute is reviewed by a court, and the application of this meaning should not be distinguished because of the purpose for which the land is used whether the purpose is governmental, public, commercial, or proprietary (MCL 117.9[8]; MSA 5.2088[8]).

8. MUNICIPAL CORPORATIONS — ANNEXATION OF TERRITORY — VACANCY — STATUTORY CONSTRUCTION — STATUTES.

The mere presence of seasonal crops on land sought to be annexed unilaterally by a city should not negate a finding of vacancy (MCL 117.9[8]; MSA 5.2088[8]).

*Reading & Etter,* for plaintiff.

*Allan W. Grossman,* Saline City Attorney, for defendant.

Before: M. J. KELLY, P.J., and ALLEN and C. L. HORN,* JJ.

M. J. KELLY, P.J. Plaintiff, Charter Township of Pittsfield, appeals of right a March 3, 1980, decision of the Washtenaw County Circuit Court which dissolved a preliminary injunction and dismissed plaintiff's complaint requesting the court to declare null and void a resolution of defendant's city council annexing certain property located in the township. On March 26, 1980, we granted the plaintiff's motions for immediate consideration and to reinstate the preliminary injunction barring defendant's use of the property, pending disposition of the instant appeal.

* Circuit judge, sitting on the Court of Appeals by assignment.

The facts as stipulated by the parties disclose the following series of events. By a land contract dated May 12, 1978, the City of Saline purchased from Robert F. Tefft a certain parcel of land contiguous to the city with the intention of developing the parcel as an industrial park. The uninhabited parcel was located in the Charter Township of Pittsfield and was zoned for agricultural use. The parcel had no buildings located within its boundaries and was used primarily for the production of crops. After purchasing the property, the city attempted to annex the land by a resolution of its city council under MCL 117.9(8); MSA 5.2088(8).[1] Pittsfield filed its complaint in Washtenaw County Circuit Court, seeking to void the annexation on the grounds that the city was not the owner of the land at the time of the resolution and that the parcel was not vacant. The lower court entered a preliminary injunction on September 22, 1978, enjoining the city from exercising any governmental authority over the parcel.

I

Plaintiff alleges as reversible error the lower court's finding that the subject parcel was "owned by" the annexing city. In support of this argument, plaintiff asserts that a city seeking to unilaterally annex contiguous parcels of land must, prior to passage of its annexation resolution, hold all legal and equitable interests in the property. Absent exclusive and indefeasible possessory rights, it is said, the prerequisite of "ownership" by the

---

[1] The statute provides in part:

"Where the territory proposed to be annexed to any city is adjacent to the city and consists of a park or vacant property located in a township and owned by the city annexing the same, and there is no one residing thereon, such territory may be annexed to the city solely by resolution of the city council of the city."

annexing municipality is not sustained. We disagree and hold that the disputed parcel herein was "owned by" the defendant as required by MCL 117.9(8); MSA 5.2088(8).

The land contract entered into by the City of Saline and Robert Tefft included the city's $30,000 down payment on the contested parcel against a total purchase price of $271,909.20. A vendee in a land contract is vested with the equitable title in the land, and the legal title remains in the vendor as security for the payment of the purchase price. *Gilford v Watkins,* 342 Mich 632; 70 NW2d 695 (1955), *Barker v Klingler,* 302 Mich 282; 4 NW2d 596 (1942), 25 Callaghan's Michigan Civil Jurisprudence, Vendors and Purchasers, § 13, p 14. The effect of vesting such equitable interests in the vendee was summarized in 77 Am Jur 2d, Vendor and Purchaser, § 317, pp 478-479:

"A contract for the sale of land operates as an equitable conversion; the vendee's interest under the contract becomes realty and the vendor's interest under the contract constitutes personalty. In equity the purchaser is regarded as the owner subject to liability for the unpaid price and the vendor as holding the legal title in trust for him from the time a valid agreement for the purchase of land is entered into. This view of the estate of the purchaser is based on the maxim that 'equity regards and treats as done what, in good conscience, ought to be done.' Accordingly, in equity a contract for the sale of land is treated, for most purposes, precisely as if it had been specifically performed. Thus, as a vendee makes payments on a land contract the vendor becomes trustee for him of the legal estate, and he becomes in equity the owner of the land to the extent of payments made. A contract for the sale of land, part of the purchase price being paid and possession taken, vests in the vendee an equitable title in fee. The vendor is a trustee of the legal title for the vendee to the extent of his payment." (Footnotes omitted.)

Thus, the defendant is the equitable owner of the property sought to be annexed.

In *Goodwin v Orson E Coe Pontiac, Inc,* 392 Mich 195, 212-213; 220 NW2d 664 (1974), the Supreme Court reversed a decision of this Court finding the contractual phrase "owned by" to have a "clear and definite meaning" or "denoting an absolute and unqualified title". The Supreme Court held:

"We agree with the able trial judge that the phrase 'owned by' is susceptible of ambiguity. Most of us would say we 'owned' our home even if, as the saying goes, we 'owned' it with the bank.

"The simple phrase 'owned by' as the able trial judge suggested is subject to qualification as to time, type, status of title, etc. The wisdom of this belief is sustained by the actual facts. Contrary to the definition of the learned appellate judges, the ownership was actually neither 'present' nor 'absolute or unqualified'. Full payment on the land contract had not been made and the title was subject to an easement and dirt removal rights.

"In short, there might well be an ambiguity in the term 'owned by'.

\* \* \*

"It is clear that ambiguity 'may' exist in the phrase 'owned by'."

In construing this statute, we are governed by traditional rules of construction. Thus, if the statute is unambiguous on its face, we will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931). However, if ambiguity exists, it is our duty to give effect to the intention of the Legislature in enacting the statute. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). To resolve a perceived ambiguity, a court will look to

the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose. *Bennetts v State Employees Retirement Board,* 95 Mich App 616; 291 NW2d 147 (1980), *Stover v Retirement Board of St Clair Shores,* 78 Mich App 409; 260 NW2d 112 (1977). Also, ambiguous statutes will be interpreted as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result. *In re Petition of State Highway Comm,* 383 Mich 709; 178 NW2d 923 (1970), *People v Miller,* 78 Mich App 336; 259 NW2d 877 (1977). Further, specific words in a given statute will be assigned their ordinary meaning unless a different interpretation is indicated. *Oshtemo Twp v Kalamazoo,* 77 Mich App 33, 39; 257 NW2d 260 (1977), MCL 8.3a; MSA 2.212(1).

As in *Goodwin,* we necessarily find the statutory term "owned by" susceptible to more than one reasonable interpretation. However, we perceive no intent in the present statute to require a city to acquire all legal and equitable rights in a parcel of land prior to seeking its unilateral annexation. A pertinent definition has been applied to the similar term "owner" which was held to include "all parties who had a claim or interest in the property, although the same might be an undivided one or fall short of an absolute ownership". *Barnes v Detroit,* 379 Mich 169, 177; 150 NW2d 740 (1967). To require that cities have all legal and equitable rights to the property they seek to annex would, we believe, impede the statutory intent of expediting the annexation of vacant property. It is unlikely that many cities could make cash purchases of land to effect speedy annexation which would be the end result of adopting the theory of

the plaintiff. Under the terms of most land contracts, it would take many years for a city to acquire the legal and equitable rights of ownership over adjoining parcels of land, a result contrary to the Legislature's intent. Therefore, we hold that the municipal ownership of land sought to be annexed under MCL 117.9(8); MSA 5.2088(8) need only extend to those incidents of ownership required to make the city the equitable owner of the property.

## II

Plaintiff also alleges reversible error in the lower court's finding that the disputed land was "vacant" as required by the annexation statute. The learned trial court applied its view of the ordinary meaning of the term:

"The fact that about two-thirds of the acreage is leased and used for cultivation of crops makes the question a close one. However, in my opinion such use is not significant enough to make the property 'non-vacant'."

This Court has twice considered what is meant by the word "vacant" in MCL 117.9(8); MSA 5.2088(8). In *Oshtemo Twp, supra,* 39-40, the Court applied its view of the ordinary meaning of the term and refused to distinguish its application to property used for governmental as opposed to private purposes:

"Upon reviewing the statutory provision in question, the Court finds no qualifying language as to the type of vacant property required to come within the purview of the statute. There is nothing in the language of the statute that limits the vacant property to property which is used for governmental or public purposes.

Without a different interpretation indicated, vacant property must be construed to mean any vacant property whether it be used for governmental or public purposes, or for commercial or proprietary purposes."

In *Pittsfield Twp v Ann Arbor,* 86 Mich App 229, 235; 274 NW2d 466 (1978), a later panel also sought to define "vacant" by reference to the word's ordinary meaning. The Court looked to the definition of vacant, as applied to land, contained in Webster's New Collegiate Dictionary (1974 ed), p 1290. After stating that vacant land was property "not put to use", the *Pittsfield Twp* Court noted its view of the statute's requirements for unilateral annexation:

"The statute requires that the land to be annexed must (a) be owned by the city and (b) consist of (1) a park or (2) land which is not resided upon and which is not being utilized for any beneficial purpose."

We agree with the *Pittsfield Twp* Court's use of an ordinary meaning test to determine the definition of vacant but part company with that panel's further holding that vacancy precludes use "for any beneficial purpose".

As noted above, our duty in reviewing the "vacant" requirement of the disputed statute is to determine and implement the Legislature's intent by its enactment. Construing the statute as a whole, we conclude that the mere presence of seasonal crops on land sought for annexation does not negate a finding of vacancy. In this regard, we note the intent of MCL 117.9(8); MSA 5.2088(8) to facilitate the annexation of lands already owned by the annexing city. To hold that crops could make a parcel of land not vacant would, we believe, ignore the fact that cultivated land lies

contiguous with the boundaries of numerous Michigan cities covered by the statute. Further, the production of crops is inherently a seasonal venture. Surely the annexation statute could not envision the valid annexation of a vacant property in January but prohibit its annexation in July because it was under cultivation. The temporary, seasonal nature of this supposed beneficial use of the land and Saline's apparent power to terminate the farm leasing agreements in any case suggest that the land should be deemed "vacant" under the annexation statute. Such an interpretation could only serve to inhibit the speedy annexation of land intended by the Legislature. We conclude that the production of farm crops, absent other uses, is insufficient to deem the disputed property not vacant so as to bar the defendant's annexation resolution.

The prior order of this Court reinstating the lower court's temporary injunctive order is dissolved. The lower court order dismissing the plaintiff's complaint as null and void is affirmed.

Affirmed.