630 So.2d 661 (1994)
STATE of Florida, DEPARTMENT of HEALTH and REHABILITATIVE SERVICES, and Janice D. Franklin, Appellants,
v.
Lawrence D. FRANKLIN, Appellee.
No. 93-00296.
District Court of Appeal of Florida, Second District.
January 14, 1994.
Sheryl D. Snodgrass of Carlton & Carlton, P.A., Lakeland, for appellants.
*662 Daniel D. Diskey of Garrabrants & Diskey, P.A., New Port Richey, for appellee.
CAMPBELL, Judge.
Appellants, Department of Health and Rehabilitative Services (HRS) and Janice D. Franklin (Wife), appeal the trial court order which determined that a subsequent Michigan court order entered pursuant to URESA (Uniform Reciprocal Enforcement of Support Act) had, for the purpose of accumulation of arrearages, modified downward the amount of child support due Wife under a previous Florida final judgment of dissolution of marriage. We reverse because under section 88.281, Florida Statutes (1991) (the URESA antinullification provision) and cases interpreting similar provisions in other states, a subsequent child support order in a responding state court does not affect arrearages that may accumulate under the child support provision of the initial decree.
We now decide this matter en banc to distinguish Harris v. Harris, 512 So.2d 968 (Fla. 2d DCA 1987), and to resolve any conflicts resulting from our subsequent decision in Lybeck v. Lybeck, 534 So.2d 933 (Fla. 2d DCA 1988), which does not cite to Harris but does rely on Florida Department of Health and Rehabilitative Services v. Ciferni, 429 So.2d 92 (Fla. 2d DCA 1983), which, in turn, was cited for approval in Harris. See also Ray v. Pentlicki, 375 So.2d 875 (Fla. 2d DCA 1979).
The final judgment of dissolution, entered August 4, 1988, in Pasco County, Florida, required Husband to pay Wife $375 per month ($4,500 per year) as child support for the parties' one minor child. Husband then moved to Michigan and, because of his failure to pay child support as ordered by the Florida court, accumulated child support arrearages. In September 1990, Wife initiated in Florida a URESA proceeding seeking to have the Michigan court, as the responding state under URESA, enforce Husband's duty of child support. The responding court in Michigan accepted jurisdiction pursuant to URESA and, without referring to the Florida final judgment of dissolution, ordered Husband to pay $40 per week in child support, or $2,080 per year, and an additional $10 per week toward an arrearage calculated to be $4,756. Husband has consistently made payments pursuant to the Michigan order and has also made a lump sum payment of $2,737 in reduction of the "arrears" as set forth in the Michigan order. The Michigan order was not appealed.
Husband subsequently moved back to Florida. In December 1991, Wife brought a contempt action in the Pasco County dissolution case for Husband's failure to pay the arrears accumulated pursuant to the Florida final judgment of dissolution. In March 1992, Husband, for the first time, sought modification of the child support as ordered in the Florida final judgment of dissolution. In October 1992, the trial judge denied Wife's motion for contempt and ruled that, until the Michigan URESA order or support was modified, Husband was required to pay only the amount of support prescribed by the Michigan URESA order, which had effectively modified downward the Florida final judgment of dissolution child support provisions so that any arrearages would be calculated only on the basis of the Michigan order. This is contrary to the provisions of section 88.281 of Florida's URESA. In URESA cases this section is generally referred to as the antinullification provision. That section provides as follows:
88.281 Application of payments.  A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.
The applicable Michigan URESA statute, Mich. Comp. Laws Ann. § 780.171(21) (West 1990), is identical except the title to that section of the Michigan law is "Support orders made pursuant to other laws."
*663 A court only has such subject matter jurisdiction as is given it or is limited by law. Both the Florida URESA Act and the Michigan URESA Act specifically provide that their courts cannot ("unless otherwise specifically provided by the court")[1]act in a URESA proceeding to "nullify" a support order made pursuant to any other law in any state or a support order made in a URESA proceeding in any other state. The courts of Michigan have specifically held, in interpreting the antinullification provision of URESA, that while a responding state court may set support at an amount that is lower than the amount set in an earlier order in another state, this later order does not modify or change the previous support order, and the arrearages that accumulate under the original order are not affected by the subsequent URESA order in a responding state. Miskimon v. Miskimon, 173 Mich. App. 393, 433 N.W.2d 419 (1988).
In Miskimon, the Michigan court had before it the reverse of the instant situation. There, Florida was the responding state on child support arrearages accumulated under an original Michigan divorce decree. As the responding state, the Florida court had ordered lower child support payments than had been ordered by the Michigan court. It is helpful to a resolution of this issue to quote at length from Miskimon which we conclude has a well-reasoned analysis of this issue:
Plaintiff's first claim of error is that the trial court misinterpreted the RURESA's antinullification (also referred to as the antisupersession) provision when it held that the 1982 Florida support order did not modify the 1980 Michigan judgment. Plaintiff argues that the payments that he made on the Florida order, which were credited in Michigan, completely satisfied his support obligation and no arrearage could accumulate.
... .
[W]e expressly adopt the position that a trial court, in a responding state, may enter its own prospective support order which differs in amount from the foreign support order. This ruling is in keeping with the vast majority of states which have addressed the issue. See Thompson v. Thompson, 366 N.W.2d 845, 847 (S.D., 1985). Although this rule does not apply to the instant case since, here, Michigan is the initiating state, the corollary of the rule applies in that a Michigan court must now determine the effect of a foreign order which set a lower amount of child support than did the Michigan judgment.
The antinullification provision provides:
"A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." M.C.L. § 780.171; M.S.A. § 25.225(21). An ambiguity exists in this provision in that it only speaks to nullification, and does not clarify whether a support order can be modified. Thus, the following two scenarios are possible: (1) the Florida support order modifies and, in effect, replaces, the Michigan judgment from the date of issuance of the Florida order, onwards; or (2) the Florida order exists separately from the Michigan judgment, which remains unmodified. Under the second scenario, any payments made under the Florida order are credited against the Michigan judgment, but arrearages can accumulate pursuant to the Michigan judgment.
Under generally recognized principles of statutory construction, if an ambiguity exists, it is this Court's duty to give effect to the intent of the Legislature in enacting the statute. Santia v. Bd. of State Canvassers, 152 Mich. App. 1, 5, 391 N.W.2d 504 (1986), quoting Pittsfield Twp. v. City *664 of Saline, 103 Mich. App. 99, 104-105, 302 N.W.2d 608 (1981). To resolve a perceived ambiguity, a court will look to the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose. Id. Also, ambiguous statutes will be interpreted as a whole and construed so as to give effect to each provision and to produce a harmonious and consistent result. Id.

As stated in M.C.L. § 780.152; M.S.A. § 25.225(2), "[t]he purposes of this act are to improve, extend, and make uniform by reciprocal legislation the enforcement of duties of support." The act is procedural only, it does not create any duties of family support. It is concerned solely with the enforcement of the already existing duties when the obligee is in one state and the obligor is in another. See Anno: Construction and effect of provision of Uniform Reciprocal Enforcement of Support Act that no support order shall supersede or nullify any other order, 31 ALR4th 347, 351; Fitzwater v. Fitzwater, 97 Mich. App. 92, 96, 294 N.W.2d 249 (1980). The RURESA's provisions set forth the rules that govern the two-state proceedings.
Although the question whether an original judgment is modified by a foreign support order is one of first impression in the State of Michigan, other jurisdictions have previously dealt with this problem. See 31 ALR4th 347, supra. We agree with those courts which have held that an initiating state is not bound by the terms of a foreign support order when calculating arrearages due under the original judgment of support.
M.C.L. § 780.154; M.S.A. § 25.225(4) states that "[t]he remedies herein provided are in addition to and not in substitution for any other remedies." Therefore, the foreign support orders provide additional, supplementary, or cumulative remedies, and do not nullify, supersede, or modify the original support decree. See Thompson, supra. Under this reasoning, the original support order is only affected by the payments credited to it pursuant to the antinullification provision. See Banton v. Mathers, 159 Ind. App. 634, 309 N.E.2d 167 (1974), citing Howard v. Howard, 191 So.2d 528, 531 (Miss. 1966); See also Oglesby v. Oglesby, 29 Utah 2d 419, 510 P.2d 1106 (1973). The reason for the credit is to prevent duplication of payment. Ainbender v. Ainbender, 344 A.2d 263, 265 (Del.Super., 1975). An obligor is not relieved of his duties under the original order, and he is entitled to a credit for only the amounts he has actually paid. Banton, supra. Therefore, an arrearage can accumulate if the foreign support order calls for payments which are less than the amount owing under the original order.
We recognize that some courts, including our own, see Fitzwater, supra, have used the word "modify" when discussing the impact of a foreign support order. However, to paraphrase the Oglesby court, we believe that such term was used in the sense that the amount of support may be modified, but not the decree of the initiating state. See Oglesby, 510 P.2d [at] 1107. Since the effect of the foreign support order is prospective only, it does not modify the original judgment.
This ruling is not unfair to plaintiff since he could have moved, in the Michigan courts, to decrease his support obligations. See M.C.L. § 552.17; M.S.A. § 25.97. This approach would not involve the RURESA. The trial judge did not err in finding that arrearage appropriately accumulated under the 1980 Michigan judgment of divorce.
433 N.W.2d at 421-423. The reasoning of the Miskimon court corresponds with that of Judge Cowart's concurring opinion in Helmick v. Helmick, 436 So.2d 1122, 1129 (Fla. 5th DCA 1983), where he stated:
Although a URESA action under the Civil Enforcement provisions may be based on previously entered orders of support, a previous support order is not essential, only facts giving rise to a duty to support. Furthermore, regardless of any previous support order, it is the responding court and not the initiating court that makes the final determination of the amount of support required to be paid by the respondent in the responding state. Although an initiating court's determination of an amount of *665 support needed by the petitioner and that respondent is able to provide may be prima facie evidence of this need and ability, this determination is not binding on the respondent court. The responding court is free to enter an award higher than a previous award or lower than a previous award. Although the responding court determines the amount of support required in the URESA proceeding, this determination does not modify the initiating state's, or any other state's, previous order of support. Amounts paid under the order of a responding state are merely credited against amounts due under the unmodified support order of an initiating state.
(Footnotes omitted.)
In Koon v. Boulder County, Department of Social Services, 494 So.2d 1126 (Fla. 1986), our supreme court approved a decision of the First District Court of Appeal which specifically relied on Judge Cowart's concurring opinion in Helmick. We believe that our decisions in Lybeck, Ciferni and Pentlicki are also consistent with the reasoning in Miskimon. In Lybeck, 534 So.2d at 934, we quoted with approval from Ciferni, 429 So.2d at 94, as follows:
The fact that the [intervening] Florida court had chosen to enforce the payment of a lesser amount of support [i.e., less than that previously fixed by a North Carolina judgment] will have no effect upon the North Carolina judgment. The arrearages [under the North Carolina judgment] will continue to accumulate subject to appropriate credit for any payments made under the Florida order.
(Citations omitted.)
In Harris, 512 So.2d at 968, the case relied on by the trial court in our case, a former wife in Florida in 1985, petitioned in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, to establish, enforce and order arrearages under a 1978 child support order entered in the Circuit Court of the Sixth Judicial Circuit for Pasco County. An intervening URESA order entered in 1980 by a responding Connecticut court had the effect of reducing the amount of child support due under the Pasco County order. After the husband returned to live in Florida, the wife established the Pasco County divorce decree in Pinellas County and sought to enforce arrearages pursuant to the higher support amount of the Pasco County order rather than the reduced amount of the Connecticut URESA order. The Pinellas County Court adopted the amount provided in the Connecticut order as the amount on which to calculate the arrearages, holding in effect that the amount of support provided for in the Pasco County order had been modified by the Connecticut order. In Harris, we affirmed that result apparently on the basis that the proceeding was not a URESA proceeding, but involved the establishment and enforcement in one Florida county of the divorce decree and support order of the circuit court of another Florida county, albeit from the same judicial circuit. Except for that single distinguishing circumstance, Harris would appear applicable to this case. However, as we said in Harris:
If the instant case were a URESA proceeding in the trial court, we would be guided by the language of section 88.281, Florida Statutes (1985). That statute contemplates that variances may occur between orders of different jurisdictions enforcing support orders pursuant to their own URESA statutes. The problem of multi-jurisdictional orders, in such instances, is resolved by section 88.281 in Florida which directs that amounts paid under the Connecticut URESA order be credited against the amount due under the original order. But, as we mentioned at the outset, this appeal does not come to us from an order arising from a URESA proceeding. Moreover, in the factual circumstances of this case, the Florida URESA statute provides us little guidance.
512 So.2d at 970.
We clearly have a case that involves the interpretation and application of URESA. We would not extend Harris to the circumstances of this case and, to the extent Harris is in conflict, we recede therefrom. A court in a state other than a responding state should give the responding state's order no more effect than the responding state would give its own order. Moreover, where uniform reciprocal statutes *666 are involved and two states have identical statutes, those statutes should be construed in a compatible manner. See §§ 88.012, 88.021 and 88.041, Fla. Stat. (1991).
Reversed and remanded with directions for further proceeding consistent herewith.
FRANK, C.J., and RYDER, DANAHY, SCHOONOVER, HALL, THREADGILL, PARKER, PATTERSON, ALTENBERND and BLUE, JJ., concur.
NOTES
[1] The meaning of this very ambiguous language is difficult if not impossible to determine. Which court, the URESA responding court or some other court in some other proceeding, can have "otherwise specifically provided" is not explained.