Sánchez Martínez, Juez Ponente
*767 TEXTO COMPLETO DE LA SENTENCIA
El Sr. José W. Ramos Rivera (el Sr. Ramos) solicita la revisión de una orden que emitió el Tribunal de Primera Instancia, Sala de Bayamón, el 4 de junio de 1998. En dicha orden, el Tribunal de Primera Instancia, entre otros asuntos, refirió a la Unidad de Examinadores de Pensiones Alimentarias una petición de aumento de pensión alimentaria incoada por la Sra. Mima Rivera García (la Sra. Rivera), en beneficio de tres hijos menores de edad habidos en su matrimonio con el Sr. Ramos.
Por las razones que a continuación exponemos, expedimos el auto de certiorari solicitado y confirmamos la orden recurrida.
I
La Sra. Rivera y el Sr. Ramos se divorciaron el 2 de febrero de 1990 en el Tribunal Superior de Bayamón, imponiéndose al último una pensión alimentaria de trescientos dólares ($300.00) quincenales, a beneficio de tres hijos menores habidos en el matrimonio, los cuales permanecieron bajo la custodia de la madre. En ese mismo año, el Sr. Ramos se mudó al estado de Florida. Pocos meses después, dado que el Sr. Ramos no estaba pagando la pensión alimentaria impuesta, la Sra. Rivera solicitó el auxilio de la División de Alimentos Recíprocos de la Oficina de Administración de los Tribunales, para que ésta requiriera al tribunal de Florida que pusiera en vigor la pensión fijada, a base de la entonces vigente Ley Uniforme de Reciprocidad para Ejecución de Obligaciones sobre Alimentos, 32 L.P.R.A. secs. 3311 y ss. El 19 de junio de 1990, la Oficina de la Administración de Tribunales completó la petición y la remitió al Interstate Central Registry, Florida Department of Health and Rehabilitative Services, Child Support Enforcement. El 10 de septiembre de 1992, un oficial examinador recomendó una pensión alimentaria de ciento dieciocho dólares ($118.00) semanales, más treinta y dos dólares ($32.00) semanales para cubrir los atrasos habidos hasta ese momento. Según la información vertida por las partes, la Corte del Noveno Circuito de Orange County de Florida adoptó dicha recomendación y modificó la orden original.
Con posterioridad a la mencionada determinación del tribunal de Florida en el 1992, no ha habido ni en dicho tribunal ni en Puerto Rico ninguna otra modificación a la pensión alimentaria. El Tribunal de Primera Instancia, Sala de Bayamón, sí ha considerado, no obstante, diversas mociones en tomo a las relaciones patemo-filiales, en algunas de las cuales se ha planteado el incumplimiento del Sr. Ramos con sus obligaciones alimentarias. Sin embargo, el Sr. Ramos señala que se ha sometido a la jurisdicción del tribunal local con el único propósito de la determinación de las relaciones patemo-filiales.
Entre los incidentes del caso que las partes nos informan, sabemos que el 21 de noviembre de 1996, el Tribunal de Primera Instancia emitió una resolución donde refirió el asunto a la Administración para el Sustento de Menores (ASUME) y recomendó a las partes solicitar la modificación de la pensión alimentaria *768 por conducto del Programa de Alimentos Recíprocos, hoy División de Alimentos Recíprocos de la Administración para el Sustento de Menores (ASUME).
El 16 de abril de 1998 se celebró una vista de cuya minuta surge que el Tribunal de Primera Instancia determinó que la pensión vigente era la establecida originalmente en Puerto Rico y solicitó a las partes que sometieran sus alegaciones por escrito. El 15 de mayo de 1998, la Sra. Rivera presentó un escrito en el cual, entre otros aspectos, solicitó un aumento de la pensión alimentaria. El 28 de mayo de 1998, el Sr. Ramos presentó un escrito en el cual objetó, entre otros puntos, que se considerara por el tribunal de Puerto Rico la solicitud de aumento de pensión alimentaria, por ser él residente y domiciliado de Florida y existir en dicho estado un caso abierto sobre pensión alimentaria.
El 4 de junio de 1998, el Tribunal de Primera Instancia emitió la orden recurrida, en la cual se ordenaba al Sr. Ramos someter en el término de veinte días una certificación oficial de sus ingresos; se refería el caso a la Unidad de Examinadores de Pensiones Alimentarias para la celebración de una vista sobre la petición de aumento de pensión; y se ordenaba a ambas partes someter planillas de información personal y económica en el término de veinte días.
Inconforme con esa determinación del Tribunal de Primera Instancia, el Sr. Ramos presentó la petición de certiorari que nos ocupa. La Sra. Rivera presentó su alegato en oposición al recurso. De otro lado, emitimos una resolución solicitando la comparecencia del Procurador General de Puerto Rico como amicus curiae, para que presentara un alegato a nombre del Estado Libre Asociado de Puerto Rico y/o de la Administración para el Sustento de Menores. El Procurador General sometió su alegato y el Sr. Ramos replicó al mismo.
II
El Sr. Ramos señala en su alegato que el Tribunal de Primera Instancia cometió dos errores. El primero consistió en no aplicar como ley del caso la resolución emitida el 21 de noviembre de 1996, en la cual se dispuso que la modificación de alimentos se tramitara bajo la Ley de Alimentos Recíprocos, supra, actualmente derogada por la Ley 180 de 20 de diciembre de 1997 conocida como Ley Interestatal Uniforme de Alimentos entre Parientes (LIUAP), 8 L.P.R.A. secs. 541 y ss. (Supl. 1998). El segundo error consistió, según el Sr. Ramos, en referir el caso a una Examinadora de Pensiones Alimentarias en Puerto Rico para que ésta considerara la petición de aumento de la pensión alimentaria, cuando el tribunal de Florida retenía, a su entender, jurisdicción continua y exclusiva de acuerdo con la LIUAP, supra.
La Sra. Rivera señala en su alegato responsivo que lo que realmente está cuestionando la petición de Certiorari es la determinación efectuada por el Tribunal de Primera Instancia en una vista celebrada el 8 de enero de 1998, en la cual dicho tribunal determinó tener jurisdicción para modificar la pensión alimentaria, por lo que considera que la petición de certiorari se presentó fuera de término. La Sra. Rivera señala por otro lado que, de todos modos, por ser Puerto Rico quien primero asumió jurisdicción sobre las cuestiones alimentarias en el presente caso, es el tribunal local quien tiene jurisdicción continua y exclusiva y que no se han dado las condiciones establecidas por la LIUAP para que Puerto Rico pierda dicha jurisdicción. Solicita por lo tanto: (1) que se desestime el recurso por falta de jurisdicción; (2) que se determine que Puerto Rico tiene jurisdicción continua y exclusiva; y (3) que se concedan honorarios de abogados.
En su escrito ante nos, el Procurador General coincide con la Sra. Rivera en que es el tribunal de Puerto Rico quien posee jurisdicción continua y exclusiva en el caso de autos. Sostiene el Procurador que para que una orden posterior de otro tribunal modificando otra orden originalmente dictada en Puerto Rico tuviera el efecto de otorgarle a ese otro estado la jurisdicción continua y exclusiva, como pretende el Sr. Ramos, tendría que haberse efectuado la modificación de acuerdo a las disposiciones de la nueva LIUAP, algo que en este caso *769 entiende el Procurador que no ha ocurrido.
Coincidimos con la apreciación del Procurador General. Veamos en detalle el derecho aplicable a los dos errores señalados.
III
El Sr. Ramos señala, en primer lugar, que la doctrina de la ley del caso impedía que el Tribunal de Primera Instancia emitiera la resolución recurrida reconociendo ahora la jurisdicción de Puerto Rico, cuando anteriormente había reconocido la jurisdicción de Florida, mediante la resolución emitida el 21 de noviembre de 1996. No tiene razón.
La doctrina de la ley del caso proviene del Derecho Común (“Common Law”) y está íntimamente ligada a la doctrina de stare decisis. En Puerto Rico, el Tribunal Supremo consideró la posible aplicación de esta doctrina en nuestros tribunales en los casos de Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 221-222 (1975), y, más recientemente, en Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 754-56 (1992).
El Tribunal Supremo afirma que en Puerto Rico no existe fundamento válido para la aplicación rígida, al modo tradicional angloamericano, de esta doctrina pues, en esta materia, rige en nuestra isla el Código Civil. Torres Cruz, supra. En aras de la certeza de las decisiones judiciales y del trámite ordenado de los casos, sin embargo, un tribunal debe evitar, en lo posible, alterar sus pronunciamientos previos, a menos que se convenza de que los mismos son erróneos. Id. Pero se trata de una cuestión de sana práctica y no de una regla inviolable. Id. Un tribunal puede, como se permitió en los dos casos citados de Pauneto y Torres Cruz, emitir una decisión posterior que contradiga una previamente emitida en el mismo caso.
En el caso de autos, por lo tanto, el hecho de que el Tribunal de Primera Instancia hubiese determinado previamente, mediante su resolución del 21 de noviembre de 1996, que recomendaba que la modificación de la pensión alimentaria se realizara bajo la Ley de Alimentos Recíprocos, reconociendo así implícitamente la jurisdicción en aquel momento del tribunal de Florida, no impide que posteriormente dicho tribunal emitiera una directriz diferente, sobre todo estando en vigor una nueva legislación sobre la materia, la L.I.U.A.P., supra.
Más aún, la pretensión del Sr. Ramos, de que el caso continúe bajo la Ley de Alimentos Recíprocos, está en abierta contradicción con la posición asumida por el Tribunal Supremo de Puerto Rico con respecto a la vigencia de la LIUAP, como veremos a renglón seguido al analizar el segundo error señalado.
IV
Como segundo error, el Sr. Ramos alega que el tribunal de Florida adquirió y, por lo tanto, retiene jurisdicción continua y exclusiva, por el hecho de haber emitido una orden en que modificó la orden original, de acuerdo con la LIUAP. Entiende el Sr. Ramos que al haber modificado la orden el tribunal de Florida, “de acuerdo con esta ley (la LIUAP) o una Ley sustancialmente similar a ésta”, dicho estado adquirió jurisdicción continua y exclusiva. No tiene razón en este aspecto tampoco el Sr. Ramos. Veamos.
El 20 de diciembre de 1997, la Asamblea Legislativa aprobó la Ley 180 para adoptar en Puerto Rico la “Uniform Interstate Family Support Act” (UIFSA), bajo el nombre de Ley Interestatal Uniforme de Alimentos entre Parientes (LIUAP), supra', enmendar la Ley Orgánica de la Administración de Sustento de Menores, 8 L.P.R.A. sec. 501 y ss. y derogar la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, Ley 71 de 20 de junio de 1956, según enmendada. 32 L.P.R.A. secs. 3311 y ss. Véase Exposición de Motivos de la LIUAP.
*770 La adopción de la LIUAP tiene, por lo tanto, el propósito de conformar nuestro estado de derecho en materia de alimentos con la política pública según expuesta en la UIFSA. Como consecuencia de la adopción local de la UIFSA, Puerto Rico entró en una relación de reciprocidad con los demás estados y territorios adoptantes. Aponte v. Barbosa, _ D.P.R. _ (1998), 98 J.T.S. 105.
La LIUAP fue aprobada en Puerto Rico para cumplir con un requisito establecido por el Congreso de Estados Unidos de que se aprobara una ley modelo uniforme (UIFSA) como condición para proveer fondos para los programas de sustento de menores y de asistencia pública a las familias necesitadas de los estados y de Puerto Rico. 
El desarrollo y eventual adopción cuasi mandatoria de la UIFSA es resultado de los esfuerzos más recientes del gobierno de Estados Unidos por adoptar legislación que propicie el que las personas cumplan con la obligación fundamental de alimentar. Tiene, además, el objetivo de corregir las más graves fallas de la legislación anterior. Antes de la adopción de la UIFSA, la legislación prevaleciente en la mayoría de los estados de Estados Unidos estaba basada en la Uniform Reciprocal Enforcement Support Act (URESA, por sus siglas en inglés), 9B U.L.A. 567 (1987), o la versión revisada de la misma (denominada RURESA), 9B U.L.A. 381 (1987). Bajo la URESA, los tribunales de un estado se sentían a menudo en libertad de modificar una orden anterior emitida por otro estado y eso ocasionaba que hubiese simultáneamente varias órdenes en vigor. Esto dificultaba la determinación de la existencia y cuantía de los posibles atrasos en el pago de la pensión alimentaria, con la consecuente incertidumbre judicial y económica, tanto para los alimentantes como para los alimentistas. 
Para remediar esa situación, la UIFSA y legislaciones germanas, propusieron la doctrina de “una-orden-a-la-vez” (“one-order-at-a-time”). Bajo ese concepto, en todo momento debe existir una única orden válida y el estado que la emitió será el único con jurisdicción continua y exclusiva para entender en el caso. Todos los demás estados tendrán la obligación de conceder a esa orden original entera fe y crédito y no tendrán facultad para modificarla a no ser que el estado original pierda jurisdicción.
V
La primera pregunta a planteamos sería determinar si efectivamente la LIUAP es la que rige en el caso de autos.
El Art. 1, Sec. 9.904, de la L.I.U.A.P. establece:

“El Tribunal General de Justicia será el foro apropiado para los casos interestatales presentados antes del 1ro de julio de 1995 y la Administración para el Sustento de Menores será el foro apropiado para aquellos que surjan a partir de dicha fecha.

Para propósitos de esta Ley, en cualquier acción de alimentos recíprocos presentada con anterioridad al 1ro de julio de 1995, en la cual Puerto Rico actúa como estado recurrido, el Tribunal General de Justicia mantendrá jurisdicción sobre estos casos. El Departamento de Justicia continuará asumiendo la representación legal. El derecho sustantivo y procesal será el que aquí se establece. ”
8 L.P.R.A. sec. 5486.
De acuerdo con esta disposición, la LIUAP constituye el derecho aplicable en todos los casos pendientes, anteriores y posteriores al 1ro. de julio de 1995. Aponte v. Barbosa, supra.
*771 De otra parte, el Tribunal Supremo de Puerto Rico consideró el alcance y la aplicación retroactiva de dicha ley en Aponte v. Barbosa, supra. En este caso se determinó que la LIUAP era de aplicación retroactiva, en primer lugar, por expresarlo claramente el Art. 1, Sec. 9.904, y, en segundo lugar, por el hecho de que, al ser una ley de carácter remedial y procesal, esa retroactividad no afectaba derechos adquiridos, por lo que se cumplía con los dos requisitos establecidos en el Art. 3 del Código Civil, 31 L.P.R.A. see. 3, que dispone que: (1) “[l]as leyes no tendrán efecto retroactivo, si no dispusieran expresamente lo contrario” y (2) que “[e]n ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior”. Aponte v. Barbosa, supra.
En el caso de autos, el primer requisito, al igual que en Aponte v. Barbosa, supra, se satisface claramente. El requisito de que no se afecten derechos adquiridos, sin embargo, lo analizamos en mayor detalle. Veamos.
Al momento de emitirse la orden en el estado de Florida en 1992, la ley vigente en materia alimentaria en dicho estado estaba acorde con la versión revisada de la URESA. Véase, 6 West's F.S.A. Capítulo 88, introducción, a la pág. 146 (Supl. 1999). La ley aplicable en Florida, antes de que se derogara la misma, disponía:

“A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by a court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state. ”

Florida Statutes Sec. 88.281 (1991). 
Si examinamos, además, jurisprudencia de dicho estado, encontramos que bajo esa legislación, el estado de Florida.no tenía capacidad para anular la orden original, por lo que, en realidad, ambas órdenes continuarían vigentes. Véase, State Dep’t. of Health & Rehab. Servs. v. Carter, 654 So.2d 267 (Fla. 2d DCA 1995). En dicho caso, se indica que un tribunal de Florida tiene autoridad para modificar una orden de pensión alimentaria para un menor concedida por un tribunal de otro estado y registrada en la Florida, pero la reducción en la obligación alimentaria no elimina la orden original. En otro caso de Florida, State Dep’t. of Health & Rehab. Servs. v. Franklin, 630 So.2d 661, 664 (Fla. 2d DCA 1994), el tribunal resolvió, en un caso bajo la URESA, que el tribunal iniciador no está sujeto a los términos de una orden posterior emitida en otro estado al calcular los atrasos bajo la orden original. En ese sentido, pueden originarse atrasos cuando la nueva orden establece una pensión alimentaria menor que la orden original. Id. Por otro lado, algunos tribunales han interpretado que puede anularse totalmente la orden original si la nueva orden indica expresamente su intención de así hacerlo. 
En el caso de autos, por lo tanto, bajo la ley anteriormente vigente en el estado de Florida, la orden emitida en ese estado no anuló la orden previa emitida en Puerto Rico. De hecho, la UIFSA retuvo la parte de esta sección de la URESA que se refiere al crédito de pagos de pensión alimentaria realizados entre órdenes simultáneamente vigentes. Véase, la UIFSA (1996), 9 U.L.A. sec. 209, en la pág. 358 (Supl. 1999). La disposición correspondiente en Puerto Rico, en la LIUAP, es el Art. 1, Sec. 2.209, la cual establece:

“Acreditación de pagos

Las cantidades recaudadas y acreditadas para un período particular según establece la orden de pensión alimentaria emitida por un tribunal de otro estado deberán ser acreditadas a las sumas acumulándose o 
*772
acumuladas para el mismo período de tiempo bajo la orden de pensión alimentaria emitida por el tribunal de Puerto Rico. ”

8 L.P.R.A. sec. 542h (Supl. 1998).
En ese sentido, la nueva ley no altera derechos adquiridos bajo la ley anterior, por lo que podemos concluir que, efectivamente, en el caso de autos rige la LIUAP. El Sr. Ramos continúa siendo responsable por la diferencia entre la orden original emitida por el tribunal de Puerto Rico en 1990 y la orden emitida por el Tribunal de Florida en 1992.
VI
En Aponte v. Barbosa, supra, el tribunal de Massachusetts había fijado originalmente una pensión alimentaria, que ahora se pretendía modificar en Puerto Rico. El Tribunal Supremo determinó que, de acuerdo con la nueva ley, la LIUAP, Massachusetts retenía jurisdicción continua y exclusiva porque no se habían dado ninguna de las condiciones para que ese estado perdiera jurisdicción y Puerto Rico la adquiriera. La orden original, en ese caso, no se había modificado. Era necesario en dicho caso, por lo tanto, analizar qué había que hacer para modificar la orden y si Puerto Rico tenía facultad para hacerlo.
En el caso de autos, la controversia es diferente. Hubo una orden emitida originalmente en Puerto Rico -la sentencia de divorcio- que fijó una pensión alimentaria. Cuando esa orden no se cumplió y no pudo ponerse en vigor en Puerto Rico al no tener el tribunal local jurisdicción sobre el alimentante que se había mudado a Florida -a base de la ley anterior a la LIUAP- se recurrió a los procedimientos que establecía la ley entonces vigente. Puerto Rico le tramitó al estado de Florida la petición de alimentos recíprocos. El tribunal de Florida, a base de la ley entonces vigente, modificó la orden o, más bien, emitió una nueva orden. Es preciso analizar, por lo tanto, cuál es la orden vigente.
La LIUAP provee, a tenor con su propósito fundamental de lograr estabilidad en las órdenes de pensiones alimentarias, un mecanismo para determinar cuál es la orden vigente en un momento dado. Esa única orden vigente será la que tendrán que poner en vigor todos los estados que hayan adoptado la UIFSA. El Art. 1, Sec. 2.207 de la LIUAP dispone, en lo pertinente: 

“Reconocimiento y preferencia entre órdenes de pensiones alimentarias de menores

(a) Cuando se interpone un procedimiento conforme lo dispuesto en esta Ley y sólo un tribunal ha emitido una orden de pensión alimentaria para un menor, la orden de ese tribunal prevalecerá y así debe ser reconocida.

(b) Cuando se inste un procedimiento conforme lo dispuesto en esta Ley, y han sido emitidas dos o más órdenes de pensión alimentaria para menores por tribunales de Puerto Rico o de otro estado en relación al mismo deudor alimentante y menor, el tribunal de Puerto Rico aplicará las siguientes normas para determinar cuál de las órdenes tiene preferencia y será reconocida para propósitos de establecer la jurisdicción continua y exclusiva:

“(1) Si sólo uno de los tribunales tuviere jurisdicción continua y exclusiva bajo esta Ley, la orden de ese tribunal prevalecerá y así debe ser reconocida.

(2) Si más de uno de los tribunales tuviere jurisdicción continua y exclusiva bajo esta Ley, una orden emitida por un tribunal emitida en el estado en que reside el menor prevalecerá y así debe ser reconocida; pero si no se 
*773
ha emitido una orden en el estado en que reside el menor; la orden más reciente prevalecerá y así debe ser reconocida.

(3) Si ninguno de los tribunales tuviere jurisdicción continua y exclusiva bajo esta Ley, el tribunal de Puerto Rico con jurisdicción sobre las partes deberá emitir una orden de pensión alimentaria para menores, la cual tendrá preferencia, y así debe ser reconocida.

(c)...”.

8 L.P.R.A. sec. 542f (Supl. 1998)
Si analizamos los párrafos citados, observamos que la sección provee un mecanismo para establecer prioridades en caso de existir diversas órdenes de pensión alimentaria a menores. El inciso (a), por ejemplo, dispone que, de existir una única orden, esa orden es la vigente, no importa cuándo se haya emitido ni si las partes ya han dejado de residir en el estado donde se emitió.
El inciso (b), crucial a nuestro caso, establece cómo determinar cuál es la orden vigente cuando han sido emitidas dos o más órdenes de pensión alimentaria para menores. En ese caso, se establecen tres posibilidades: (1) si sólo un tribunal tiene jurisdicción continua y exclusiva, la orden emitida por ese tribunal será la orden vigente; (2) si existen dos tribunales con jurisdicción continua y exclusiva, prevalecerá aquella emitida por el estado en que reside el menor, o de no residir el menor en ninguno de los estados que emitió orden, la vigente será la orden más reciente; (3) si ninguno de los tribunales tiene jurisdicción continua y exclusiva, el tribunal de Puerto Rico con jurisdicción sobre las partes deberá emitir la orden de pensión alimentaria y esa será la orden vigente y el tribunal que la emitió tendrá jurisdicción continua y exclusiva. 
Para aplicar, por lo tanto, el citado inciso (b), lo crucial es determinar cuál de los estados, si alguno, tiene jurisdicción continua y exclusiva.
La LIUAP incluye las disposiciones sobre jurisdicción continua y exclusiva en el Art.l, Sec. 2.205, 8 L.P.R. A. sec. 542d (Supl. 1998). En lo pertinente a nuestro caso, el artículo citado indica:

“Jurisdicción continua y exclusiva

(a) El tribunal de Puerto Rico que emita una orden de pensión alimentaria para un menor conforme dispone la ley tiene jurisdicción continua y exclusiva sobre dicha orden:

(1) Mientras el alimentante, el alimentista o el menor en cuyo beneficio se ha emitido la orden de pensión alimentaria mantengan su residencia en Puerto Rico, o

(2) cuando todas las partes hayan prestado su consentimiento por escrito en el tribunal de Puerto Rico para que un tribunal de otro estado modifique la orden y asuma jurisdicción continua y exclusiva”. (Enfasis nuestro.)
8 L.P.R.A. sec. 542d (Supl. 1998).
La sección citada es considerada como la disposición más importante y crucial de dicha ley. El concepto de jurisdicción continua y exclusiva se origina en la Parental Kidnapping Prevention Act of 1980, 28 U.S.C.A. sec. 1738A (1994), legislación federal dirigida a evitar el traslado de niños interestatalmente sin el consentimiento del padre custodio. La incorporación de dicho concepto a la nueva legislación elimina los *774 conflictos que se planteaban bajo la ley anterior sobre cuál era el derecho aplicable, por las discrepancias entre las leyes a alimentarias entre los diversos estados y reduce la probabilidad de que un alimentante se mude a otro estado buscando legislación más favorable. 
El Art. 1, Sec. 2.205, de la LIUAP, supra, indica, por lo tanto, en qué consiste y, por ende, de qué manera puede perderse esa jurisdicción continua y exclusiva. Como indica el Tribunal Supremo, “el tribunal que emite una orden de pensión alimentaria en beneficio de un menor retiene jurisdicción continua y exclusiva sobre la orden mientras alguna de las partes -el alimentante, el alimentista o el menor en cuyo beneficio se ha emitido la orden- continúe residiendo en ese estado y mientras las partes no consientan por escrito a que el tribunal de otro estado modifique la orden y asuma jurisdicción continua y exclusiva”. Monte v. Barbosa, supra. Los tribunales adoptantes están obligados, por lo tanto, a reconocer la jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria para menores de acuerdo con la LIUAP o de una ley sustancialmente similar. Id., a la pág. 19.
Por lo tanto, de acuerdo con este Art. 1, Sec. 2.205, supra, en el caso de autos, el tribunal de Puerto Rico que emitió la orden de pensión alimentaria original, en ocasión del divorcio, retiene jurisdicción continua y exclusiva sobre dicha orden, pues no se han dado las condiciones que señala dicha sección para que el tribunal que emitió la orden original pierda su jurisdicción. En el caso de autos, (1) los menores alimentistas continúan residiendo en Puerto Rico y (2) las partes no han acordado por escrito que el tribunal de Florida modifique la orden y asuma jurisdicción continua y exclusiva. De acuerdo a las disposiciones de la LIUAP, el tribunal de Puerto Rico no ha perdido la jurisdicción continua y exclusiva. Por lo tanto, es la orden del tribunal puertorriqueño la que prevalece. Cualquier modificación a efectuarse a dicha orden debe ser considerada exclusivamente por los tribunales de Puerto Rico.
VII
Las partes plantean ciertos argumentos adicionales que consideramos conveniente analizar.
El planteamiento de la Sra. Rivera de que la petición de certiorari se ha presentado fuera de término, porque lo que realmente se está cuestionando es una determinación del 8 de enero de 1998, aunque interesante, no es correcto.
La Ley de la Judicatura de Puerto Rico de 1994, Plan de Reorganización de la Rama Judicial, Ley Núm. la de 28 de julio de 1994, 4 L.P.R.A. secs. 22 y ss. (Supl. 1998), estableció el Tribunal de Circuito de Apelaciones. El Art. 4.002 de esta ley, 4 L.P.R.A. sec. 22k (Supl. 1998), dispuso la competencia de dicho tribunal y en su inciso (f) estableció que éste entenderá, “[mjediante auto de certiorari expedido a su discreción, de cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia... ”, refiriéndose a resoluciones de carácter interlocutorio. En esos casos, indica el artículo citado, “el recurso de certiorari se formalizará presentando una solicitud dentro de los treinta (30) días siguientes a la fecha de la notificación de la resolución u orden”, término que se indica es de cumplimiento estricto, lo cual no admite excepciones, a no ser que se demuestre justa causa debidamente fundamentada en la petición del recurso. 4 L.P.R.A. sec. 22k (Supl. 1998). El Reglamento del Tribunal de Circuito de Apelaciones contiene disposiciones análogas en la Regla 32, inciso (D), 4 L.P.R.A. Ap. XII-A, R. 32 (Supl. 1998).
En el caso de autos, aunque sea cierto que el Tribunal de Primera Instancia ha emitido resoluciones previas relacionadas con los puntos en controversia en este recurso, de las cuales se pudo haber recurrido ante nos, no es menos cierto que el Sr. Ramos tenía derecho a solicitar el auto a raíz de que se dictara la orden que nos ocupa. Dicha orden fue notificada el 24 de junio de 1998 y la petición de certiorari se presentó el 16 de julio de 1998, dentro del término reglamentario.
*775 En cuanto al remedio solicitado por la Sra. Rivera de que se le provean honorarios de abogado, el Tribunal Supremo ha indicado que el concepto de alimentos cubre dichos honorarios en una acción para reclamar alimentos de menores, sin que sea necesario para otorgarlos el determinar que el alimentante haya actuado con temeridad. Guadalupe Viera v. Morell, supra, a la pág. 14. Más aún, la Ley Especial de Sustento de Menores, 8 L.P.R.A. see. 521, en su inciso (1), dispone para la imposición al alimentante de pago de honorarios de abogado en todos los casos de fijación o aumento de pensión alimentaria en que el alimentista prevalezca. El Tribunal de Primera Instancia determinará, en su momento, la cuantía de los honorarios de abogado, de proceder la solicitud de aumento o aún antes, si es que ella los solicitare pendente lite. En cualquier caso, sin embargo, la solicitud del remedio ante nos es prematura.
El Sr. Ramos plantea, además, el argumento de que por ser él residente y domiciliado del estado de Florida, es más conveniente tramitar todo lo relativo a la pensión alimentaria en dicho estado que es donde se encuentran los documentos necesarios. No tiene razón. En el caso de autos, como hemos discutido previamente, el estado con jurisdicción continua y exclusiva es Puerto Rico, el cual, en este caso, coincide con el foro de residencia de los menores. De todos modos, la LIUAP incluye disposiciones que permiten a la parte no residente entablar, desde su estado de residencia, una acción para modificar la orden de pensión alimentaria para menores vigente en el estado con jurisdicción continua y exclusiva. 8 L.P.R.A. sec. 542e (b) (Supl. 1998). Este es el único acomodo que permite la LIUAP.
Como un punto adicional, los argumentos del Sr. Ramos en su Réplica al Informe del Procurador General, en cuanto a (1) que la orden de Florida de 1992 advino final y firme y (2) que la petición tramitada por la Oficina de Administración de Tribunales a dicho estado constituye el consentimiento escrito requerido por la LIUAP para la pérdida de jurisdicción, son completamente frívolos. En primer lugar, los dictámenes sobre alimentos de menores están revestidos del más alto interés público, lo que permite su revisión sin que pueda oponerse a éstos la defensa de cosa juzgada. Vega v. Alicea, 145 D.P.R. _ (1998), 98 J.T.S. 39, a la pág. 770. En segundo lugar, el documento de petición firmado por la Sra. Rivera tenía como único objetivo tramitar la reclamación a base del procedimiento disponible en aquel momento y no constituia un documento para prestar el consentimiento escrito requerido por la ley actual. Véase, 8 L.P.R.A. sec. 542d (a) (Supl. 1998).
Siendo Puerto Rico el estado con jurisdicción continua y exclusiva, es éste el único con autoridad para modificar la misma, a tenor con la Ley Interestatal Uniforme de Alimentos entre Parientes, 8 L.P.R.A. sec. 541 y ss. (Supl. 1998). Actuó correctamente, por lo tanto, el Tribunal de Primera Instancia al referir el asunto a la Unidad de Examinadores de Pensiones Alimentarias.
VIII
Por último, el Art. 1, Sec. 2.207, de la LIUAP, además de incluir las disposiciones sobre determinación de prioridades entre órdenes que ya vimos, establece el procedimiento a seguir para determinar cuál es la orden vigente:

“Reconocimiento y preferencia entre órdenes de pensiones alimentarias de menores

(c) Si dos o más órdenes de pensión alimentaria para menores han sido emitidas contra el mismo alimentante y el mismo menor, y el alimentante o el alimentista reside en Puerto Rico, cualquiera de las partes podrá solicitar al tribunal de Puerto Rico que determine cuál de las órdenes tiene preferencia y ésta debe ser reconocida bajo lo dispuesto en el inciso (b) de esta sección. La solicitud deberá estar acompañada de copia certificada de cada una de las órdenes de pensión alimentaria en vigor. La parte solicitante notificará la 
*776
solicitud, a cada una de las partes cuyos derechos puedan ser afectados por la determinación.

(d) El tribunal que ha emitido la orden preferente bajo lo dispuesto en los incisos (a), (b) o (c) de esta sección será el tribunal con jurisdicción continua y exclusiva bajo la sec. 542d de este título.

(e) El tribunal de Puerto Rico que mediante orden identifique la orden de pensión alimentaria preferente bajo los incisos (b) (1) o (2) de esta sección o que emita una nueva orden de pensión alimentaria bajo lo dispuesto en el inciso (b) (3) de esta sección deberá indicar en dicha orden los fundamentos en que basó su determinación... ”.

8 L.P.R.A. sec. 542f (Supl. 1998)
En el caso de autos, por lo tanto, el Tribunal de Primera Instancia deberá emitir una orden estableciendo claramente la pensión alimentaria preferente e indicar en dicha orden los fundamentos en que basó esa determinación, de conformidad con lo dispuesto en esta sentencia.
IX
Con estos antecedentes, se expide el auto solicitado, se confirma la resolución recurrida y se instruye al Tribunal de Primera Instancia a que emita una orden estableciendo claramente la orden de pensión alimentaria preferente e indique en dicha orden los fundamentos para esa determinación, además de cumplir con las otras disposiciones que establece la Ley Interestatal Uniforme de Alimentos entre Parientes, supra.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 29
1. El Sr. Ramos cita en ese sentido los apartados (b) y (d) del Art. 1, Sec. 2.205, de la Ley Interestatal Uniforme de Alimentos entre Parientes, 8 L.P.R.A. sec. 542d (Supl. 1998).
2. La reforma general a los programas de bienestar social de Estados Unidos emprendida en 1996 (denominada en inglés como “welfare reform ”) mediante la adopción de la Ley General de Responsabilidad Personal y Oportunidad de Empleos de 1996 (Personal Responsibility and Work Opportunity Reconciliation Act), (P.R.W.O.R.A.), Ley Pública Núm. 104-193, estableció el requisito de que para el 1 de enero de 1998, todos los estados tenían que haber adoptado la Ley Interestatal Uniforme de Alimentos entre Parientes (Uniform Interstate Family Support Act). 42 U.S.C.A. 666 (f) (Supl. 1998). Véase, Exposición de Motivos de la LIUAP, supra.
3. Debido al hecho de que ambas leyes alimentarias, tanto la LIUAP actualmente en vigor, come la ley anterior, tienen su origen en estatutos modelos estadounidenses, al discutir las disposiciones de la nueva legislación, utilizaremos, en general, las referencias de las leyes originales, UIFSA y URESA, en lugar de las siglas de la legislación local.
4. Véase Patricia Wick Hatamyar, Critical Applications and Proposals for Improvement of the Uniform Interstate Family Support Act and the Full Faith and Credits for Child Support Orders Act. 71 St. John's Law Review 1 (1997).
5. En Puerto Rico, el texto prevaleciente antes de que se derogara la ley anterior, la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, correspondía también al texto enmendado de la URESA. Véase, 32 L.P.R.A. sec. 3313t (Supl. 1997).
6. Hemos identificado diversas fuentes que favorecen este punto de vista. En Jefferson County Child Support Enforcement *777 Unit v. Holland, 939 S.W. 2d 302 (Ark. 1997), el Tribunal Supremo de Arkansas determinó que la modificación por un tribunal local, bajo RURESA, de una orden emitida previamente por un tribunal de otro estado, no anulaba la orden original si la nueva orden no expresaba claramente la intención de anularla, por lo que la orden original continuaba vigente. Como consecuencia, de ser menor la obligación bajo la nueva orden que bajo la orden original, el alimentante continuaba obligado a la cantidad original y cualquier diferencia se acumulaba como atrasos, aunque estuviera cumpliendo con la orden local. En dicho caso, tanto la orden original como la modificación, fueron adoptadas estando en vigor la legislación anterior -la RURESA- en cada uno de los estados. Otro caso análogo, en este sentido, y en el que el Tribunal Supremo de Arkansas sigue el caso anterior, es Office of Child Support Enforcement v. Troxel, 931 S. W. 2d 784 (Ark. 1996), en el cual citan además otros casos anteriores.
7. Tina M. Fielding, The Uniform Interstate Family Support Act: The New URESA; 20U Dayton L. Rev. 425 (1994); identifica a In re: Marriage of Popenhager, 99 Cal. App. 3d 514 (1979).
8. Aunque hemos optado por citar el texto de la ley en español, es preciso señalar que la Exposición de Motivos de la LIUAP indica que, en caso de discrepancia, tendrá preferencia el texto en inglés. De hecho, se incluye el texto en inglés de la UIFSA en la LIUAP.
9. De hecho, el inciso (d) del Art. 1, Sec. 2.207, de la LIUAP, supra, dispone que “[e]l tribunal que ha emitido la orden preferente bajo lo dispuesto en los incisos (a), (b) o (c) de esta sección será el tribunal con jurisdicción continua y exclusiva bajo la sec. 542d de este título. ” 8 L.P.R.A. sec. 542f (Supl. 1998) (Enfasis nuestro.)
10. Véase, Uniform Family Support Act, 9 U.L.A. sec. 205, comentarios, en las págs. 350-351 (Supl. 1998).
11. Véase, Tina M. Fielding, nota 7, ante.