988 So.2d 176 (2008)
STATE of Louisiana
v.
John Melvin WATKINS.
No. 2007-CJ-1487.
Supreme Court of Louisiana.
February 26, 2008.
Rehearing Denied May 9, 2008.
Paul J. Carmouche, District Attorney, Brian Paul Joffrion, Eugene Wathen Bryson, III, Assistant District Attorneys, for applicant.
The Smith Law Office, Eskridge Elgin Smith, Jr., Bossier City, Linda Lee Smith, for respondent.
VICTORY, J.
We granted a writ application in this child support enforcement case to determine whether the court of appeal erred in failing to enforce a California consent judgment in Louisiana pursuant to the Uniform Interstate Family Support Act ("UIFSA"). After reviewing the record and the applicable law, we find that the California judgment is entitled to enforcement pursuant to UIFSA and other applicable law.

FACTS AND PROCEDURAL HISTORY
Although the record in this case is sparse, the following relevant facts can be gleaned about the underlying California child support obligation. On September 3, 1976, Shirley Watkins was born to John M. Watkins ("Watkins") and Judith Watkins in California. In 1978, a Judgment of Divorce was entered in a Los Angeles, California court between John and Judith Watkins, ordering Watkins to *177 pay $160.00 in support for their minor child, Shirley (the "1978 Support Order").[1] In order to recover this obligation, seizure of his income tax refunds began in 1987. Subsequently, Judith Watkins moved to Riverside, California and in 1988, made an application for state aid in California, thereby assigning to the State of California her right to collect child support. In 1989, a Registration of Foreign Support Order was made with an assignment of the obligation from Los Angeles County to Riverside County noting an amount in arrears of $3,600.00. On May 2, 1989, an Order Assigning Salary or Wages was entered in Riverside ordering Watkins' employer to deduct $150.00 per month in child support payments, plus $100.00 per month towards arrears of $3,900.00.
On May 5, 1990, a Notice of Proposed Income Assignment Order (Interstate) was sent from the State of Louisiana to Watkins, notifying him that by virtue of the Order of Support entered in California in 1978, he owed child support payments of $150.00 per month, plus $4,350.00 in arrearages as of May 2, 1989. This Notice informed Watkins that unless he took certain action, an Income Assignment Order would be served upon his employer and his wages garnished. On June 7, 1990, a Petition to Stay Service was filed in the Juvenile Court in Caddo Parish in Docket No. 41596. On June 26, 1990, the matter was continued in order for the court to obtain further information from Riverside, California.
Thereafter, the Riverside County Child Support Division calculated that Watkins owed past due support amounting to $18,634.55, which included arrearages beginning in June of 1986, plus legal interest. Pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA"), Riverside requested the registration of the order by a Louisiana court because Watkins was domiciled in Louisiana. Thus, on February 23, 1994, the Caddo Parish Child Support Division filed an action to register and enforce the 1978 Support Order in the Juvenile Court for Caddo Parish, with Docket No. 49071, for monthly support of $160.00 and to collect seven years of accumulated arrears. Watkins filed a Peremptory Exception alleging that La. C.C. art. 3497.1 provided a liberative prescriptive period of five years for all payments of child support arrears that might be owed.[2] The Juvenile Court rendered final judgment on June 30, 1994, three months before Shirley's 18th birthday, as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant, JOHN M. WATKINS, pay the sum of One Hundred Sixty and No/100 ($160.00) Dollars per month as child support; with $120.00 for current support and $40.00 toward acknowledged arrears in the amount of $5,000.00 payable on the 15th of each month, beginning July 15, 1994, for the use and benefit of his said above minor child; Current support will be paid until September 1994; then total amount of $160.00 will be paid toward acknowledged arrears until liquidated.
*178 Thus, the court enforced the $160.00 monthly order, but limited the State to enforcing only five of the requested seven years of arrears and excluded legal interest, resulting in a judgment authorizing the enforcement of $5,000.00 of the total $18,634.55 owed to Riverside.[3] That entire obligation was paid prior to October 22, 1998, when Watkins received a letter from the Support Enforcement Services of the State of Louisiana notifying him as follows:
Your child support case with the above referenced person [Judith Watkins] has been closed with this Agency.
If you are under obligation to pay child support, any future child support payments should be paid directly to the custodial parent.
The termination of your obligation through this office does not exempt you from making child support payments. You should contact the custodial parent and/or your attorney to determine what actions you should take in the future.
On November 30, 1998, the Caddo Parish District Attorney filed a Motion to Dismiss Child Support Case on behalf of Support Enforcement Services, asking that the case be dismissed because "The State of California notified us that they have closed their case and this was a responding URESA/UIFSA case."[4] The Juvenile Court Judge signed the Order that date, stating that "IT IS ORDERED that this cause of action be dismissed without prejudice, that any warrants in this matter be recalled; and that all arrears, if any were ordered and/or have accrued be cancelled."[5]
At some point between 1998 and 2002, Judith Watkins evidently moved back to Los Angeles County. On March 29, 2002, Los Angeles County began to garnish Watkins' wages in Louisiana in order to collect additional arrears due under the 1978 Support Order. This continued until April 11, 2003, when, in response to Watkins' inquiries, a telephone hearing was held between Watkins, a Los Angeles County district attorney, and a Los Angeles County judge, wherein Watkins claims he was told that he owed arrearages of over $60,000.00 and that he could either continue to have his wages garnished at a rate of $1,200.00 per month, or he could consent to have wages garnished at the rate of $400.00 per month. As a result of this telephone conference, Watkins was sent, and signed, a Consent Judgment with Los Angeles County on April 13, 2003 (the "2003 California Consent Judgment") wherein it was stipulated that Watkins owed child support arrears as of April 1, 2003 in the amount of $58,639.00, payable in the amount of $400.00 each month beginning April 15, 2003, with interest accruing on the principal amount of $29,567.90. The remaining $29,071.17 owed was accrued unpaid interest. The Order further stated that "[t]he arrears amount(s) above is set as of 4/2/03 without prejudice to the right of either party and/or the county to request, upon noticed motion, that the court adjust the stated amount(s) according to additional proof presented at a future date."
An audit by Los Angeles County Child Support Services dated November 12, 2004 stated that Watkins owed $59,275.19 in *179 arrears, with a credit given for the "$5240 paid via LA. (7/94-10/98)." Watkins was also credited with payments totaling $24,244.27 within the audit. On November 4, 2004, Los Angeles County sent to the Louisiana Central Registry a "Child Support Enforcement Transmittal," stating that Watkins owed Los Angeles Country $60,912.05 in arrears, computed from December 1, 1978 through October 29, 2004, and based on the April 14, 2003 Support Order. The transmittal sought to register the "Foreign Support Order" for enforcement.
Accordingly, on November, 29, 2004, a petition was filed in the First Judicial District Court to register the 2003 California Consent Judgment for enforcement in Louisiana under UIFSA. On December 3, 2004, Watkins filed a request for a contested hearing and filed a peremptory exception requesting the registration action be dismissed alleging that the June 2004 judgment in Louisiana was a bar to enforcement under the principle of res judicata. The Hearing Officer denied Watkins' exception with written reasons, to which Watkins filed an objection. By agreement, the Caddo Parish Child Support Division transferred the matter to the Juvenile Court for Caddo Parish due to the court having a more complete record and prior background involving the case. On August 10, 2006, the petition was filed in the Juvenile Court, which affirmed the Hearing Officer's Recommendation registering the 2003 California Consent Judgment.
On May 9, 2007, the court of appeal reversed the decision of the Juvenile Court, finding that the June 1994 judgment by the Caddo Parish Juvenile Court ordering Watkins to pay $5,000 in arrears was a final judgment in favor of plaintiff which was paid in full by Watkins. State v. Watkins, 42,060 (La.App. 2 Cir. 5/9/07), 957 So.2d 340. Accordingly, the court of appeal found as follows:
A valid and final judgment in favor of the plaintiff is conclusive between the same parties and all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment. La. R.S. 13:4231(1). Furthermore, the record shows that the judgment was paid in full in 1998. In late 2002, California decided to apply nearly all payments to interest and imposed a judgment for more than $58,000 for the same claim previously asserted by California in Louisiana in 1989 and 1990, and which was adjudicated and paid in full. Clearly, the California claim was paid in full and their present action in Louisiana is an attempt to circumvent the prior ruling.
The Louisiana Assistant District Attorney's argument that the only thing that can be considered is the consent judgment is like the proverbial ostrich. The situation presented in this case looks, sounds, and walks like res judicata and full payment.
957 So.2d at 344. We granted the State's writ application to determine whether the 2003 California Consent Judgment is entitled to registration and enforcement pursuant to the provisions of URESA and UIFSA. State v. Watkins, 07-1487 (La.10/12/07), 966 So.2d 535.

DISCUSSION
Prior to 1995, interstate child and spousal support was governed by URESA, found in former Articles 1301-1342 of the Louisiana Children's Code.[6] URESA was *180 reciprocal legislation enacted throughout the United States to "improve and extend by reciprocal legislation the enforcement of duties of support." La. Ch. C. art. 1302 (repealed). URESA allowed orders issued in one state to be registered and enforced in another state as if issued by a court of that state. Under URESA, after one state (the "initiating state") made a support order, another state (the "responding state") could determine the amount it would award according to the laws of the jurisdiction where the obligor was present during the period for which support was sought, which was presumed to be the responding state, i.e., in this case, Louisiana. Former La. Ch. C. art. 1309. In fact, under former La. Ch. C. art. 1326, it was the duty of the responding state to determine if a duty of support existed, and then the responding state could set the amount or arrears in a different amount than the initiating state. URESA expressly provided that "[t]he remedies herein provided are in addition to and not in substitution for any other remedies." La. Ch. C. art. 1305 (repealed). As we explained in Jurado v. Brashear, 00-1306 (La.3/19/01), 782 So.2d 575, 578,[7] "[u]nder URESA, when one state made a support award and a second state subsequently modified the award, the effect was to create two conflicting awards." "The result was that multiple and conflicting support orders frequently were in effect in several states at the same time." Id.
Here, Los Angeles County issued a Support Order in 1978 which was sent to Louisiana for enforcement under URESA in 1994. The Juvenile Court in Caddo Parish enforced the $160.00 monthly award, but only awarded $5,000 in arrears because, at that time, Louisiana law only allowed a 5 year prescriptive period for such arrears under La. C.C. 3497.1. This was proper under URESA and the effect of this was to have two conflicting orders. The significant governing provision for this situation is URESA's anti-nullification provision, which provided as follows:
A support order made by a court of this state pursuant to this Chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.
La. Ch. C. art. 1333 (repealed).
As commentators have explained:
[A court] is not prevented from entering a child support order different from that previously ordered, on the basis that such an award is effective prospectively only, and thus the court is not nullifying or superseding the prior order within the meaning of the provision ... In such cases, the courts have reasoned that proceedings under the Act are de novo, in that the responding court has *181 the authority to make an independent determination regarding the duty of support based on presently existing conditions, that the remedies under the Act are in addition to and not in substitution for any other remedies, and that the Act contemplates that more than one order of support may be outstanding at any given time for the same obligation.
Andrea G. Nadel, Annotation, Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supercede or Nullify Any Other Order, 31 A.L.R.4th 347, 352 (1984). Numerous other state courts have discussed this provision of URESA and have held that a responding court may order the payment of an amount differing from the earlier order entered by the initiating state, but the earlier order remains fully enforceable unless the responding court specifies that their order modifies, nullifies, or supersedes the earlier court order. South Carolina Dept. of Social Services, County of Siskiyou v. Martin, 371 S.C. 21, 637 S.E.2d 310 (11/06/06); State, Dept. of Revenue, Child Support Enforcement Div. ex rel. Valdez v. Valdez, 941 P.2d 144 (Alaska 6/27/97); Berkman v. Berkman, 951 So.2d 928 (Fla. App. 3 Dist. 2/28/07); Lundahl v. Telford, 116 Cal.App.4th 305, 9 Cal.Rptr.3d 902 (2/27/04); Lorenzo v. Skowronski-Thompson, 738 So.2d 967 (Fla.App. 2 Dist. 6/23/99); State, Dept. of Health and Rehabilitative Services v. Franklin, 630 So.2d 661 (Fla.App. 2 Dist. 1/14/94).
Thus, under the anti-nullification provision, the 1978 Support Order was not nullified or superceded by the 1994 Louisiana support order unless "specifically provided by the [Louisiana] court." The Louisiana court's 1998 dismissal of the Louisiana suit contained the following language: "IT IS ORDERED that this cause of action be dismissed without prejudice, that any warrants in this matter be recalled; and that all arrears, if any were ordered and/or have accrued be cancelled." Although this language is specific in cancelling "all arrears, if any were ordered and/or have accrued," in our view, the language of the 1998 dismissal was not intended to "nullify" California's 1978 Support Order, but was instead intended only to dismiss the 1994 Louisiana enforcement action and provide that no arrearages would continue to accrue under that order. While under URESA, this state could have nullified the prior California order, neither the 1994 judgment, nor the 1998 dismissal, contained language specifically nullifying the 1978 California Support Order under URESA's anti-nullification provision; thus, that order remained effective and enforceable. See Valdez, supra at 150 ("unless the responding state's order specifically modifies a prior support order, it is merely an enforcement tool and not a judgment that is entitled to full faith and credit under the federal constitution") (citing In re Marriage of Wettstein, 160 Ill.App.3d 554, 113 Ill.Dec. 1, 514 N.E.2d 783 (4 Dist. 1987); Banton v. Mathers, 159 Ind.App. 634, 309 N.Ed.2d 167, 171-73 (3 Dist.1974); Elsner v. Elsner, 425 S.W.2d 254, 256 (Mo. App.1967); Oglesby v. Oglesby, 29 Utah 2d 419, 510 P.2d 1106, 1107-08 (1973)).
Subsequently, in an apparent effort to enforce the 1978 Support Order, Los Angeles County began garnishing Watkins' wages in 2002 through 2003. Watkins' inquiries to Los Angeles County resulted in the 2003 Consent Judgment, a new judgment governed by UIFSA. As we explained in Jurado, supra:
[i]n 1995, the Louisiana Legislature repealed URESA and adopted the Uniform Interstate Family Support Act (UIFSA), which followed the provisions of the Model Act promulgated by the National Conference of Commissioners on Uniform State Laws. The primary purpose of UIFSA was to eliminate multiple *182 and inconsistent support orders by establishing a principle of having only one controlling order in effect at any one time. This principle was implemented by a definitional concept called "continuing, exclusive jurisdiction," under which the state that issues the support order (the issuing state) retains exclusive jurisdiction over the order, until specified conditions occur which provide a basis for jurisdiction in another state.
782 So.2d at 577-78. Under UIFSA, as opposed to URESA, there can be only one controlling order, initially issued by the issuing state, which is the state of controlling, exclusive jurisdiction.[8] A state with controlling, exclusive jurisdiction over a support order retains this jurisdiction throughout the existence of the support obligation, and another state may not modify this order except by consent of the parties, or if the issuing court loses jurisdiction over the order.[9] La. Ch. C. art. 1302.5[10]; Jurado, supra (holding that once a support order is established, the issuing court retains continuing, exclusive jurisdiction under La. Ch.Code art. *183 1302.5A (1) until the obligor, the individual obligee and the child all establish a residence outside of the issuing state; or (2) until all consent in writing to assumption of continuing, exclusive jurisdiction by another state; or (3) until the court of another state modifies the order of the issuing state in accordance with UIFSA).
In addition, in an effort to reconcile the multiple and inconsistent support orders issued under URESA that could have been in effect at the time UIFSA was enacted, UIFSA has a provision which directs which of the multiple orders is to be the controlling order. La. Ch. C. art. 1302.7 provides in pertinent part:
B. If a proceeding is brought under this Chapter, and two or more child support orders have been issued by tribunals of this state or another state with regard to the same obligor and child,[11] a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:
(1) If only one of the tribunals wold have continuing, exclusive jurisdiction under this Chapter, the order of that tribunal controls and must be so recognized.
(2) If more than one of the tribunals would have continuing, exclusive jurisdiction under this Chapter, an order issued by a tribunal in the current home state of the child controls and must be so recognized, but if an order has not been issued in the current home state of the child, the order most recently issued controls and must be so recognized.
(3) If none of the tribunals would have continuing, exclusive jurisdiction under his Chapter, the tribunal of this state having jurisdiction over the parties shall issue a child support order, which controls and must be so recognized.
La. Ch. C. art. 1302.7(B). This article is consistent with the provisions of 28 U.S.C.A. § 1738(B) governing "Full Faith and Credit for Support Orders."[12] Pursuant to these statutes, only one state, *184 California, has continuing, exclusive jurisdiction under UIFSA.[13]
In light of this background, we consider the ruling by the court of appeal. As a defense to this UIFSA action in Louisiana, Watkins claims, and the court of appeal agreed, that res judicata is a bar to enforcement of the 2003 Consent Judgment because the 1994 Louisiana judgment was a final judgment that was paid in full and is conclusive between the parties. However, that argument fails for two reasons. First of all, as explained above, under the anti-nullification provisions of URESA, Louisiana was entitled to render an award of child support in a different amount than that ordered by the prior California support order, but that did not render the prior California award null and unenforceable. Instead, the California support order continued in effect, with arrears accruing pursuant to that order. However, in enforcing that order by garnishing Watkins' wages then securing a consent judgment in 2003, Watkins was entitled to credit for the amounts paid pursuant to Louisiana's 1994 judgment, which the California audit of 2004 indicates was done. Secondly, UIFSA provides limited grounds for contesting the validity or enforcement of a registered order, as follows:
(1) The issuing tribunal lacked personal jurisdiction over the contesting party;
(2) The order was obtained by fraud;
(3) The order has been vacated, suspended, or modified by a later order;
(4) The issuing tribunal has stayed the order pending appeal;
(5) There is a defense under the law of this state to the remedy sought;
(6) Full or partial payment has been made;
(7) The prescriptive period under Article 1306.4 (Choice of law) precludes enforcement of some or all of the arrearages.
La. Ch. C. art. 1306.7. In this case, Watkins argues that res judicata qualifies as "a defense under the law of this state to the remedy sought" and that "full or partial payment has been made," However, as we explained above, res judicata is not a defense to a child enforcement action under URESA because the prior court order remains valid and enforceable, in spite of this court's later court order. The 2003 Consent Judgment is a new judgment which California seeks to enforce, although it is the result of California's attempts to enforce the 1978 Support Order by garnishing Watkins' wages in 2002 and 2003 and reaching an agreement with Watkins by virtue of a consent judgment to garnish his wages at a lower rate than provided under the 1978 Support Order. In any event, as stated above, California has continuing, exclusive jurisdiction over this matter, which includes the authority to modify its prior order. Finally, while full or partial payment is a listed defense, only the Louisiana judgment was fully paid, and while the California judgment was partially paid by his payment of the Louisiana judgment, Watkins was evidently given credit for this payment. Any discrepancies in the amount sought to be enforced by the 2003 California Consent Judgment must be argued in California, as it is the court with continuing, exclusive jurisdiction. Further, that judgment specifically states that "[t]he arrears amount(s) above is set as of 4/2/03 without prejudice to the right of either party and/or the county to request, upon noticed motion, that the court adjust the stated amount(s) according *185 to additional proof presented at a future date."

CONCLUSION
Under URESA and UIFSA, when a child support order has been issued by one state, it may be registered and enforced in another state, assuming that state has jurisdiction. Under URESA, the responding state could enforce the award in a different amount than that requested by the initiating state; however, pursuant to URESA's anti-nullification provision, the initial support order in this case was not nullified and remained enforceable, subject to a credit for any amounts paid pursuant to the responding state's order. Further, res judicata is not a valid defense under either URESA and UIFSA because the 1978 Support Order remained enforceable in spite of Louisiana's 1994 judgment. California's effort to enforce the 1978 Support Order via the 2003 Consent Judgment is also valid and enforceable. Under UIFSA, California retained continuing, exclusive jurisdiction over the child support order, and thus retained jurisdiction to garnish Watkins' wages and enter a consent judgment in an amount less that required under the 1978 Support Order. Any relief Watkins seeks from either the 1978 Support Order or the 2003 Consent Judgment must be obtained in California, the state with continuing, exclusive jurisdiction under UIFSA.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the Caddo Parish Juvenile Court is reinstated.
REVERSED.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice, dissenting and assigning reasons.
In my view, the consent judgment signed by Mr. Watkins emanates from the same obligation that was the subject of a satisfied judgment and is barred by res judicata.
John and Judith Watkins have a daughter, who was born on September 3, 1976. In December 1978, upon the dissolution of the marriage, Judith obtained a Child Support Judgment in Los Angeles, California, ordering Mr. Watkins to pay $160.00 per month until the minor child reached 18 years old. When the mother of the minor child filed for California Aid in 1988, she assigned her rights to the State of California to collect child support, pursuant to the 1978 judgment. In 1989, Los Angeles County forwarded the case to Riverside County, California, which sought to collect support against Mr. Watkins in the juvenile court in Caddo Parish, Louisiana. In May 1990, Mr. Watkins was notified that by virtue of the 1978 Judgment, he owed $4,350.00 in arrearage.
In February 1994, the Support Order was registered and enforced by Caddo Parish Child Support Division, Docket No. 49071, which ordered the payment of $160.00 per month and the collection of seven years of accumulated arrears. In response, Mr. Watkins filed a Peremptory Exception alleging that LSA-C.C. art. 3497.1 provided a liberative prescriptive period of five years for all payments of child support arrears that might be owed. On June 30, 1994, three months before the minor child's 18th birthday, the Juvenile Court ordered that Mr. Watkins pay "$160.00 per month as child support; with $120.00 for current support and $40 toward acknowledged arrears in the amount of $5,000.00 ... beginning July 15, 1994... until September 1994" when the daughter reached majority; "then ... *186 $160.00 will be paid toward acknowledged arrears until liquidated."
According to LSA-C.C. art. 3497.1,[1] California was limited to the enforcement of only five years of arrearage and prohibited from collecting legal interest, reducing the once $18,634.55 to $5,000. It is important to note that the State of California did not appeal the June 1994 Caddo Parish judgment applying Louisiana prescriptive statutes and limiting the arrearage to the $5,000.00. Mr. Watkins paid the entire obligation owed by October 22, 1998. Both the Caddo Parish Juvenile Court and Riverside County, California acknowledged this payment and closed the case, by cancelling all accrued arrears.
LSA-Ch.C. art. 1306.7 provides, in pertinent part, that:
A. A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses:
* * * * *
(6) Full or partial payment has been made.
In 2002, Los Angeles County began garnishing Mr. Watkins' wages at a rate of $1,200 per month. After Mr. Watkins contacted the Assistant District Attorney by telephone, the $1,200 lien reduced to $400 per month. The telephone agreement was reduced to writing and faxed to Mr. Watkins for his signature. In November 2004, the State of California requested that Louisiana register and enforce the consent judgment under the Uniform Interstate Family Support Act.
It is my opinion that the subsequent 2003 Consent Judgment cannot be enforced, as Mr. Watkins fulfilled his child support obligation as required by the previous 1994 judgment, by paying the full payment. Mr. Watkins' payment made in satisfaction of the 1994 judgment precluded the State of California from seeking additional arrearage, interest, or penalties. When neither party appealed this ruling, this judgment became final and conclusive between the same parties, and all causes of actions existing at the time of the final judgment, arising out of the transaction or occurrence that is the subject matter of the litigation, were extinguished and merged in the judgment. LSA-R.S. 13:4231(1). The new California consent judgment for $58,000.00, which represented the same claims previously asserted in 1989 and 1990, was barred by res judicata. In my opinion, Mr. Watkins satisfied his obligation of support to this minor child in 1998.
NOTES
[1] A prior order of support was issued in Los Angeles County on September 7, 1978, ordering Watkins to pay $150.00 per month.
[2] Under URESA, pursuant to former La. Ch. C. art. 1309, the law of the state where the obligor is present for the period during which support is sought governs the duty of support and La. C.C. art. 3497.1 provided a five year prescriptive period for child support payments. That law has changed and now UIFSA provides that the state's law with the longest prescriptive period applies. California has no prescriptive period for child support payments.
[3] The action filed in Docket No. 41596 was dismissed because of the resolution of the matter in Docket No. 49071.
[4] A letter from Louisiana to Riverside County regarding tax refund intercepts was returned to Louisiana with a hand written note from Riverside stating that "[o]ur case was closed as of 12-4-96 ..."
[5] The docket number on this Motion and Order, 41596, was apparently in error and should have been 49017.
[6] Because both the original 1978 Support Order and the 1994 Louisiana judgment occurred prior to 1995, URESA governs the validity of those orders and the enforceability of those orders prior to 1995. However, the enforceability of both these orders after 1995 and the 2003 California Consent Judgment are governed by UIFSA.
[7] The issue in Jurado was whether the Louisiana court that originally issued a child support order retained continuing, exclusive jurisdiction under UIFSA, after both parents and the children had relocated to other states, to not only enforce the order, but also to modify the order.
[8] The choice of law provisions of UIFSA, La. Ch. C. art. 1306.4 provide: "A. The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order;" and "B. In a proceeding for arrearages, the prescriptive period under the laws of this state or of the issuing state, whichever is longer, applies."
[9] As a complement to Article 1302.5, La. Ch. C. art. 1306.11 establishes the conditions under which the continuing, exclusive jurisdiction of the issuing state is released, which are when the child, individual obligee, and the obligor do not reside in the issuing state, a petitioner who is a nonresident of this state seeks modification, and the respondent is subject to the personal jurisdiction of this state.
[10] La. Ch. C. art. 1302.5 provides:

A. A tribunal of this state issuing a support order consistent with the laws of this state has continuing, exclusive jurisdiction over a child support order as follows:
(1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued.
(2) Until all of the parties who are individuals have filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
B. A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this Chapter or a law substantially similar to this Chapter.
C. If a child support order of this state is modified by a tribunal of another state pursuant to this Chapter or a law substantially similar to this Chapter, a tribunal of this state loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this state, and may only:
(1) Enforce the order that was modified as to amounts accruing before the modification.
(2) Enforce nonmodifiable aspects of that order.
(3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.
D. A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this Chapter or a law substantially similar to this Chapter.
E. A temporary support order issued ex parte or pending resolution of a jurisdictional conflict does not create continuing, exclusive jurisdiction in the issuing tribunal.
F. A tribunal of this state issuing a support order consistent with the laws of this state has continuing, exclusive jurisdiction over a spousal support order throughout the existence of the support obligation. A tribunal of this state may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the laws of that state.
[11] "Child" is defined by La. Ch. C. art. 1301.3(2) as "an individual, whether over or under the age of majority, who is or is alleged to be owed a duty of support by the individual's parent or who is alleged to be the beneficiary of a support order directed to the parent."
[12] 28 U.S.C.A. § 1738B, provides in pertinent part:

(f) Recognition of child support orders. If 1 or more child support orders have been issued with regard to an obligor and a child, a court shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction and enforcement:
(1) If only 1 court has issued a child support order, the order of that court must be recognized.
(2) If 2 or more courts have issued child support orders for the same obligor and child, and only 1 of the courts would have continuing, exclusive jurisdiction under this section, the order of that court must be recognized.
(3) If 2 or more courts have issued child support orders for the same obligor and child, and more than 1 of the courts would have continuing, exclusive jurisdiction under this section, an order issued by a court in the current home state of the child must be recognized, but if an order has not been issued in the current home State of the child, the order most recently issued must be recognized.
(4) If 2 or more courts have issued child support orders for the same obligor and child, and none of the courts would have continuing, exclusive jurisdiction under this section, a court having jurisdiction over the parties shall issue a child support order, which must be recognized.
(5) The court that has issued an order recognized under this subsection is the court having continuing, exclusive jurisdiction under subsection (d).
[13] There have been no facts alleged, nor evidence produced, which indicate that either Judith or Shirley no longer reside in California.
[1] LSA-C.C. art. 3497.1 provides that:

An action to make executory arrearages of spousal support or installment payments awarded for contributions made by one spouse to the education or training of the other spouse is subject to a liberative prescription of five years.