MOORE, J.
| tThis appeal involves an effort by the State of California, Riverside County, Department of Child Support Services (“CSS”) to register pursuant to the Uniform Interstate Family Support Act (“UIFSA”)[1] a 2011 California support order for collection of an arrearage allegedly due from a 1987 California child support judgment. On January 12, 2012, the State of Louisiana, Department of Children and Family Services, Child Support Enforcement (“DCFS-CSE”), filed a petition to *177 register the UIFSA support order on behalf of CSS. On November 5, 2013, ¡the district court adopted the recommendation of a hearing officer vacating the UIFSA registration and enjoining CSS from collecting the arrearage now exceeding $77,699.67.[2] DCFS-CSE filed a motion for new trial, which' was denied after, a hearing. It how appeals the judgment denying its motion for a new trial. For the following reasons, we affirm the underlying November 2013, judgment vacating the registration.
Facts
On April 17, 1987, a Riverside County, California, court ordered the defendant, David L. Hampton, to pay $160 per month per child support commencing March 1, 1987, for his two children from his marriage to Joycelyn Gordon. The two children were Olympica Hampton, age 11, dob 9/21/75, and Sidney Hampton, age 5, dob 3/24/82. Olympica is now age 39 Rand Sidney is age 33.
David Hampton moved from California to Monroe, Louisiana, in the latter half of 1992. By this time, he had made some, but not all, monthly payments pursuant to the 1987 support order. As of July 1992, Hampton was $16,792 behind in support payments and owed $5,343 in interest calculated at 10% per annum by California.
After Hampton moved to Louisiana, his former wife, Joycelyn Gordon, initiated a URESA request from the California CSS to register the support order for enforcement in Louisiana. The District Attorr ne/s office in Ouachita Parish filed the petition for registration. Hampton responded to the petition and indicated by a handwritten note on the back of an Answer form that his income had decreased, and he could not afford to pay the amount of support ordered. The Ouachita Parish assistant, district attorney construed, this note as a motion to modify the support award. At the scheduled- hearing on May 6, 1993, the assistant district attorney offered to reduce the support award to $103 and Hampton accepted the offer without an evidentiary hearing. Fourth District Court Judge James Boddie signed a judgment on May 10, .1993, reducing Hampton’s child support obligation to $103 per month. It is the effect of this judgment on the California support judgment, if any, that lies at the heart of the instant dispute.
Over the next 15 years, depending upon Iris income and employment, Hampton made sporadic monthly support payments.The payments were collected by DCFS-CSE and sent to California. Because' there were periods of nonpayment, the record contains some motions for contempt and hearing |.3notices regarding nonpayment of the support obligation. By 2008, eight years after the -monthly support obligation had ended for Hampton’s youngest child, Hampton completed payment of all child support arrearage due under Judge Boddie’s reduced support order. Louisiana DCFS-CSE closed its file on Hampton. By this time, Hampton’s children were adults, ages 33 and 26.
In 2010, CSS obtained a direct income assignment under La. R.S. 46:236.3[3] from Hampton’s employers, JRJ Enterprises d/b/a Hampton Inn and Lamix d/b/a The Comfort Inn. Hampton’s employers began withholding approximately $370 per month from Hampton’s paychecks. This money was sent directly from the employer to CSS. In response to the income assign *178 ment, Hampton filed a petition against the Louisiana DCFS-CSE to enjoin CSS and his employers from collecting under the income assignment and for reimbursement for the monies already deducted from his paychecks. He contended that he had paid all of his support obligations as required by Judge Boddie’s judgment of May 10,1993.
DCFS-CSE filed several exceptions to Hampton’s petition, including an exception of improper joinder. Essentially, DCFS-CSE alleged that it was not involved in the income assignment, nor was it any longer acting on behalf of CSS, since it had closed Hampton’s case back in 2008. Its position was that, without an extant registration of' an order for enforcement of a child support award, they were under no obligation to appear, and indeed could not appear, on behalf of CSS.
14At the hearing on October 15, 2010, Hearing Officer Lisa Trammel-Sullivan granted DCFS-CSE’s exception of improper joinder and dismissed it from the case. She gave Hampton 30 days to amend his petition naming CSS as ■ the proper defendant. In her written findings of fact and proposed judgment, the hearing officer stated:
The ultimate issue in this ease (whether the original California order was superseded by Judge Boddie’s later reduction) must await receipt of a transcript of his ruling (which is in this order). See State v. Watkins, 988 So.2d 176 (La.2008). The undersigned is quite familiar with Judge Boddie’s practices and anticipates that he did intend to supersede the California judgment. Certainly it seems inequitable for California for this long after the fact to collect an old judgment that they made no effort to enforce during thirteen-odd years that Louisiana collected the reduced judgment.
Hampton amended his petition by naming CSS as the defendant, and CSS was subsequently served. A hearing was scheduled for January 21, 2011, on the amended petition. However, on that date, CSS requested a 60-day continuance and permission to appear on the re-set hearing date by way of tele-trial. The court agreed and the matter was re-set for April 8,2011.
While this hearing was pending, Hampton filed an ex parte motion for a judgment “nunc pro tunc” (Lat. “now for then”), requesting the court to amend Judge Bod-die’s 1993 judgment to expressly state that the Louisiana judgment “superseded” the April 17, 1987, California support judgment. Judge Sharon Marchman denied the ex parte motion, but ordered a hearing on a rule to show cause why the petition request should not be granted. DCFS-CSE was given notice of the April 5, 2011 hearing on April 1, 2011. DCFS-CSE appeared at the hearing and told the court that | sLouisiana was no longer involved in the case. It informed the court that CSS had not been sent formal notice of the hearing.[4] After the hearing, Judge Alvin Sharp signed the “nunc pro tunc” judgment on April 5, 2011, adding the amendment language to the judgment. Sixteen months later, he would sign a judgment nullifying that judgment.
The record does not contain a transcript of the scheduled April 8, 2011, hearing on *179 Hampton’s amended petition to enjoin CSS from collection efforts against Hampton. CSS was scheduled to appear by telephone conference or “tele-trial,” but there is no record that this hearing occurred.[5] A judgment was rendered on April 8, 2011, by Hearing Officer Vicki L. Green, who, after noting that the judgment “nunc pro tunc” amended the 1993 judgment to specifically state that “this order modifies and supersedes the California judgment rendered on April 17,1987,” ordered that CSS terminate any and all further collection efforts against Hampton.
Subsequently,- on January 12, 2012, DCFS-CSE filed a petition to nullify the “nunc pro tunc” judgment on grounds that CSS never received notice of the hearing on the rule to show cause, and a UIFSA petition to register/set arrearage for enforcement and collection. This petition brought DCFS-CSE back into the case. The petition alleged that Hampton still | (¡owed CSS $26,585.80 principal and $48,285.26 in interest for a total arrearage of $74,871.06.
After a hearing on August 7, 2012, Judge Sharp nullified the “nunc pro tunc” judgment he had rendered on April 5, 2011. The court set a date of October 9, 2012, for a hearing on the registration of the UIFSA, but it was later re-set for January 15, 2013. Subsequently, on March 12, 2013, the UIFSA was registered and a hearing was set for April 16, 2013, to set the arrearage.
After the April 16 hearing, Hearing Officer Sullivan recommended that the UIFSA registration be vacated because it had already ruled on October 15, 2010, that Judge Boddie’s judgment superseded the California court order and that the judgment was a final judgrnenk[6]
On April 18, 2013, DCFS-CSE filed an objection' to Heading Officer Sullivan’s recommendation that the UIFSA be vacated. A rehearing was set for June 11, 2013. After the rehearing, on July 30, 2013, the hearing officer again recommended that the UIFSA order be vacated for the same reasons. DCFS-CSE then requested a rehearing before a district judge.
Following the hearing before Judge Benjamin Jones on November 5, 2013, Judge Jones affirmed Hearing Officer Sullivan’s recommendation to vacate the UIF-SA registration and signed the judgment in court. DCFS-CSE filed a motion for a new trial on November 27 and again on December 1720, 2013.[7]
A hearing on the motion for new trial was held on January 10, 2014, before Judge Wilson Rambo.' On April 23, 2014, Judge Rambo denied the motion for new trial. In its reasons, the court noted that when California made its original request to register the 1987 California support order, the Ouachita Parish District Attorney appeared on its behalf as 'its duly authorized representative. This representative entered into a reduction agreement with Hampton which resulted in a reduced sup *180 port, order. For the next: 18 years Hampton paid in accordance, with-- that, agreement and those payments were forwarded to California, At no time did California apply for a rehearing, or a new trial, or appeal or request for- review of the order. The court concluded that California had voluntarily acquiesced • to Judge Boddie’s judgment such that there is no arrearage owed to the State of California and no interest on any arrearage.
This appeal followed.

Posture of the Appeal

As stated above, DCFS-CSE specifically appealed the judgment denying the motion for new trial. A judgment denying a motion for new trial is an interlocutory judgment; and is ordinarily not appealable. See La. C.C.P. art. 2083(C). Holloway v. Gulf Motors, Inc., 588 So.2d 1322 (La.App. 2 Cir. 10/30/91); General Motors Accept. Corp. v. Deep South Pest Control, Inc., 247 La. 625, 173 So.2d 190 (1965); Kidd v. Fortenberry, 384 So.2d 509 (La.App. 2 Cir.1980). The denial of a motion for new trial is reviewable only under the appellate court’s supervisory jurisdiction for abuse of discretion.
On the other hand,-our courts have held that appeals are .favored by our law. Any doubt concerning the validity of an appeal should be resolved in favor of the appellant to the end that an appeal can be sustained. (Citations omitted)-.
' As a general rule, when the motion for appeal refers to a specific judgment denying a motion for new trial, yet the appellant exhibits a clear intention to appeal instead the underlying judgment on the merits, then the appeal should be considered. Brister v. Continental Ins. Co., 30,429 (La.App. 2 Cir. 4/8/98), 712 So.2d 177; Lozier v. Estate of Elmer, 10-754, pp. 3-4 (La.App. 5 Cir. 2/15/11), 64 So.3d 237, 239, writ denied, 2011-0529 (La.4/25/11), 62 So.3d 93.
In this instance, DCFS-CSE raises eight assignments of error, several of which pertain to the denial of the, motion for new trial, not the underlying November 5, 2013, judgment from which it filed a motion for new trial. However, the first assignment of -error alleges that the trial court erred by affirming the October 15, 2010, Hearing Officer Recommendation.[8] At the November 2013 hearing regarding Hearing Officer Sullivan’s April 16, 2011, recommendation to vacate the UIFSA registration from California, Judge Jones stated that he was “going to uphold the Hearing Officer’s ^position in the matter.” Additionally, the form judgment signed by Judge Jones has a handwritten provision upholding the April 16, 2011, and October 15, 2010, hearing officer’s recommendations. DCFS-CSE contends that the latter of these recommendations Was later deemed a “final judgment” which led to several erroneous • rulings, generally on grounds of “res judicata,”, including the November 5, 2013, judgment. In short, DSFS-CSE. submits that by the November 5, 2013, judgment, the district court adopted the April 16, 2013, hearing officer recommendation to vacate CSS’s current UIFSA registration on the grounds that the October 15, 2010, hearing officer’s findings and recommendations constituted a final judgment. As a result, it contends that the November 5, 2013, judgment was contrary to the law and evidence and- the trial court erred in denying the motion for new trial.
*181 We also note that in Holloway v. Gulf Motors, Inc., supra, we reviewed a direct appeal of a judgment denying a motion for new trial where peremptory grounds for granting a new trial were alleged. La. C.C.P. art.1972 sets forth peremptory grounds for new trial:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and evidence. * * *
An examination of the entire record, is appropriate upon an assertion that the judgment is contrary to the law and evidence, and an appellate court will set aside a failure to grant a new trial when manifestly erroneous. Holloway v. Gulf Motors, Inc., supra; Succession of Latham, 571 So.2d 797 (La.App. 2 Cir.1990); Dawson v. Mazda Motors of America, Inc., 475 So.2d 372 (La.App. 1 Cir.1985); David v. David, 347 So.2d 885 (La.App. 3 Cir.1977).
Discussion
As noted above, in 1993, interstate child and spousal support was governed by URESA which was enacted in Louisiana under former Arts. 1301-1342 of the Louisiana Children’s Code.[9] URESA allowed orders issued in one state to be registered and enforced in another state as if issued by a court of that state. Under URESA, after one state (the “initiating state”) made a support order, another state (the “responding state”) could determine the amount it would award according to .the laws of the jurisdiction where the obligor was present during the period for which support was sought, which was presumed to be the responding state, i.e., in this case, Louisiana. Former La. Ch. C. art. 1309. It was the duty of the responding state to determine if a duty of support existed, and then the responding state could set the amount or arrears in a different amount than the initiating state. Former La. Ch. C. art. 1326.
URESA expressly provided that “[t]he remedies herein provided are in addition to and not in substitution for any other remedies.” La. Ch. C. art. 1305 (repealed). “Under URESA, when one state made a support award and a second state subsequently modified the award; the effect was to create two. conflicting awards.” Jurado v. Brashear, 00-1306 (La.3/19/01), 782 So.2d 575, 578. “The result was that multiple and conflicting support orders | n frequently were in effect in several states at the same time.” Id.
In this case, Riverside County issued a Support Order in 1987 which was sent to Monroe, Louisiana, for enforcement under URESA in January of 1993. At the registration hearing on May 5, 1993, before the Fourth District Court, Judge Boddie presiding, the assistant district ■ attorney informed the'Court that, in addition to the support order from Riverside County for $160 per month per child for two children, another support order from Los Angeles County involving two additional children of Hampton had been rendered three months before the Riverside. County order.[10] Surmising that the Riverside County court *182 was likely unaware of the Los Angeles County order when it issued its order, and considering Hampton’s reduced income in Louisiana, the court agreed with the assistant district attorney’s recommendation that Hampton’s total monthly support obligation under the Riverside County order should be reduced to $103 per month. Hampton and DCFS-CSE consented to a judgment for that amount without an evi-dentiary hearing.
Judge Boddie’s modification of the award was proper under URESA. However, the question presented in the long history of this case is whether Judge Bod-die’s judgment superseded or replaced the California judgment.
URESA’s anti-nullification provision enacted in Louisiana as La. Ch. C. art. 1333 (repealed), provided:
A support order made by a court of this state pursuant to this Chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a | ^support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.
As observed in State v. Watkins, supra, commentators have explained that:
[A court] is not prevented from entering a child support order different from that previously ordered, on the basis that such an award is effective prospectively only, and thus the court is not nullifying or superseding the prior order within the meaning of the provision ... In such cases, the courts have reasoned that proceedings under the Act are de novo, in that the responding court has the authority to make an independent determination regarding the duty of support based on presently existing conditions, that the remedies under the Act are in addition to and not in substitution for any other remedies, and that the Act contemplates that more than one order of support may be outstanding at any given time for the same obligation.[11]
Other states interpreting this provision of URESA have held that a responding court may order the payment of an amount differing from the earlier order entered by the initiating state, but the earlier order remains fully enforceable unless the responding court specifies that their order modifies, nullifies, or supersedes the earlier court order. South Carolina Dept. of Social Services, County of Siskiyou v. Martin, 371 S.C. 21, 637 S.E.2d 310 (11/6/06); State, Dept. of Revenue, Child Support Enforcement Div. ex rel. Valdez v. Valdez, 941 P.2d 144 (Alaska 6/27/97); Berkman v. Berkman, 951 So.2d 928 (Fla.App. 3 Dist. 2/28/07); Lundahl v. Telford, 116 Cal.App.4th 305, 9 Cal.Rptr.3d 902 (2/27/04); Lorenzo v. Skowronski-Thompson, 738 So.2d 967 (Fla.App. 2 Dist. 6/23/99); State, Dept. of Health and Rehabilitative Services v. Franklin, 630 So.2d 661 (Fla.App. 2 Dist. 1/14/94).
In State v. Watkins, 2007-1487 (La.2/26/08), 988 So.2d 176, the supreme court held that a 1978 support order was not nullified or superseded by the 1994 Louisiana support order .unless “specifical *183 ly provided by the [Louisiana] court.” Thus, it held that a Louisiana court’[s] 1998 dismissal of the Louisiana suit containing the following language did not nullify California’s 1978 support order:
IT IS ORDERED that this cause of action be dismissed without prejudice, that any warrants in this matter be recalled; and that all arrears, if any were ordered and/or have accrued be can-celled.
Although the judgment specifically can-celled “all arrears, if any were ordered and/or have accrued,” the court stated that, in its view, the language of the 1998 dismissal was not intended to “nullify” California’s 1978 support order, but was instead intended only to dismiss the 1994 Louisiana enforcement action and provide that no arrearages would continue to accrue under that order. ' The court noted that, while under URESA, this state could have nullified the prior California order, neither-the 1994 judgment, nor the 1998 dismissal, contained language specifically nullifying the 1978 California support order under URESA’s anti-nullification provision; thus, that order, remained effective and enforceable. State v. Watkins, supra at 180. See also, Valdez, supra at 150 (“unless the responding state’s order specifically modifies a prior support order, it is merely an enforcement tool 114and not a judgment that is entitled to full faith and credit under the federal constitution”) (citing In re Marriage of Wettstein, 160 Ill.App.3d 554, 113 Ill.Dec. 1, 514 N.E.2d 783 (4 Dist.1987); Banton v. Mathers, 159 Ind.App. 634, 309 N.Ed.2d 167, 171-73 (3 Dist.1974); Eisner v. Eisner, 425 S.W.2d 254, 256 (Mo.App.1967); Oglesby v. Oglesby, 29 Utah 2d 419, 510 P.2d 1106, 1107-08 (1973)).
In the instant case, the relevant part of the May 10, 1993, judgment reads as follows:
THE COURT ORDERS THAT THE DEFENDANT SHALL PAY TO THE 4th JDC-CS FUND THE SUM OF $103 PER MONTH, FOR THE USE AND BENEFIT OF THE MINOR CHILD(REN), DUE AND PAYABLE ON THE FIRST DAY OF EACH AND EVERY MONTH, BEGINNING JUNE 1,1993.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT AN INCOME ASSIGNMENT’' BE EFFECTUATED IMMEDIATELY, AND THAT MEDICAL INSURANCE BE PROVIDED FOR THE MINOR CHILDREN, IF AVAILABLE TO THE DEFENDANT AT A REASONABLE COST, AND THAT A FEE NOT TO EXCEED FIVE PERCENT (5%) OF THE SUPPORT OBLIGATION SHALL BE PAID AT THE SAME AND TOGETHER WITH THE REGULAR SUPPORT PAYMENTS BY CASHIER’S CHECK OR MONEY ORDER TO THE 4th JDC-CS FUND, P.O. BOX 1552, MONROE, LOUISIANA, 71210-1552, PURSUANT TO THE PROVISIONS OF R.S. 46:236.5.
Although the judgment above contains no language stating that it supersedes or replaces the California support order, a fair reading of the hearing transcript indicates that Judge Boddie believed that his judgment would supersede the California support order. At this hearing, the assistant district attorney, who was acting on behalf of CSS and who filed the petition to register the California support order, informed the court that a ^separate judgment for $320 per month for two of Hampton’s other .children had been rendered by a Los Angeles County court three months prior to the Riverside County judgment. After some discussion, the court concluded, along with the assistant district attorney, that the Riverside court was unaware of *184 the earlier support order involving two other children. The assistant district attorney surmised that the Riverside court was unaware of the prior support order because it would have taken that judgment into consideration before rendering the instant support award. Despite the recommendation by Judge Boddie that the matter be continued until the assistant district attorney discussed this issue with California, the assistant district attorney told the court that he could dispose of the matter right now, and based on Hampton’s current income, offered to reduce the support award to a tptal of $103. per month.[12] Hampton agreed to that amount. The court then stated:
Well now ... now wait a minute now. Listen to me. You filed a motion for a hearing, which you’re entitled to. I want you to understand that. But you have brought some new information today that they were unaware of. And they looked at it and Mr. Jedynak, doing his calculations, says that he comes up, based on that new information with ... what was it Mr. Jedynak?
⅜ ⅜ ⅜
You understand that it becomes an enforceable order and judgment of this court?
After Hampton waived, an evidentiary hearing and agreed to. the proposed 1 ^reduction, .the court stated:
“Okay, Let .it become an enforceable . order and judgment of the Court.”,
Although the judgment itself does-not state that it supersedes the California support order, we interpret Judge Boddie’s statements, including the suggestion by Judge Boddie to the assistant district attorney to discuss the matter with California to mean that he intended to supersede the California judgment. ■ Importantly, we observe that the judgment reducing the support obligation was not a contested judgment, nor the product of an evidentia-ry hearing, but was, in fact, initiated by the assistant district attorney who was acting on behalf of CSS, and who also stipulated the amount of the reduced support obligation. We also note that California did not contest Judge Boddie’s judgment. When Hampton filed a petition to enjoin California from utilizing a direct income assignment in 2010, some 18 years after Judge Boddie’s. 1993 judgment, DCFS-CSE filed an exception of improper joinder alleging that it had closed its file and was no longer involved in the case. This implies, at least, that DCFS-CSE believed that Judge Boddie’s judgment had superseded the California support order and that order had been satisfied.
We therefore conclude that Judge Bod-die’s May 10,1993, judgment, which resulted from an agreement between Hampton and the assistant district attorney acting for the interests of -California, superseded the California support order. ■ ' ■
We turn now to DCFS-CSE’s assignments of error.
By its first assignment, DCFS-CSE contends that the. trial court erred |1Tin affirming the October .15, 2010,-recommen-dation of Hearing Officer Sullivan,
'This assignment of trial court error evidently 'concerns the November 5,' 2013, Fourth District-Court judgment in which the court adopted the recommendation (proposed judgment) that Hearing Officer *185 Sullivan rendered on April 16, 2013. At the conclusion of the November 5, 2013, hearing, Judge Benjamin Jones stated:.
I’m going to uphold the Hearing Officer’s position in the matter. I’m not going to award any money sent to California in this matter. Its seems to me that it’s time for this matter td be dead.,
Judge Jones signed a, printed form judgment on the same day. The form included a handwritten. notation: “HQ recommendations from 2010 upheld. 4-16-13 recommendation upheld.”
, As noted above, the April 16, 2013, proposed judgment vacated the UIPSA registration on the grounds that the October 15, 2010, judgment was a final judgment which held, that Judge Boddie’s May 10, 1993, judgment that reduced Hampton’s support obligation “superseded” the California support judgment.[13] Specifically, Hearing Officer Sullivan noted on the judgment form:
Registration vacated. HO already ruled 10-15-10 that J. Boddie superseded CA order, State v. Watkins notwithstanding. That is a final judgment. No new issues raised by CA’s attempt to collect in 2013.
| iSThe October 15, 2010, recommendation concerns Hampton’s petition to enjoin CSS from effectuating an income assignment on Hampton’s employers or to engage in any other collection, efforts of the April 17, 1987, judgment. The hearing officer, granted, inter ,alia, DCFS-CSE’s .exception of improper joinder and. dismissed it from the case since it no longer had an open file on Hampton after he completed payment of his reduced support obligation in 2008. The proper party defendant was CSS, who had not been served with the petition to enjoin the income assignment. The hearing officer gave Hampton 30 days amend his petition and a hearing was set for January 21, 2011.
DCFS-CSE, which now represents CSS’s interests in this appeal, argues that the January 21, 2011, hearing was never held, nor was there any other hearing held for CSS to appear regarding the allegations of the petition to enjoin.[14] It maintains that the October 15, 2010, ruling was not a final judgment, but merely the hearing officer’s recommendation, particularly the opinion by the hearing officer that Judge Boddie intended his judgment to supersede the California court order.
Furthermore, because CSS was not served notice of the October 15, 2010, hearing, DCFS-CSE contends that the ruling or judgment should be considered an absolute nullity under La. C.C.P. art. 2002(A)(2). That article provides that a final judgment shall be annulled if it is rendered “[ajgainst a defendant who has not been served with process as required by law and who 119has not waived objection to jurisdiction.;.
DCFS-CSE' argues that CSS has never been properly 'served and never given an opportunity for a hearing.
Because we have determined that Judge Boddie’s May 10, 1993, judgment super *186 seded the California support order, the trial court did not err when, in the November 5, 2013 ruling, it adopted the recommendations of the hearing officer in 2010 and 2013. Therefore, this assignment is without merit.
By its second assignment of error, DCFS-CSE alleges that the trial court erred in ruling contrary to the law regarding URESA and UIFSA proceedings. Specifically, DCFS-CSE argues that the 1993 judgment support order did not nullify or supersede the California court order. Two orders from two states could be enforced provided that credit for payments is given. This assignment is rendered moot by our determination that the 1993 judgment superseded the California court order.
By its third assignment of error, DCFS-CSE contends that the trial court erred in ruling that the matter was res judicata. The appeal concerns the denial of the motion for new trial with respect to the November 5, 2013, judgment signed by Judge Jones in which he adopted Hearing Officer Sullivan’s recommendation that the UIFSA registration be vacated. During that hearing, DCFS-CSE stated that it was objecting to the hearing officer’s ruling that this is res judicata from 2010— referring to the hearing officer’s recommendations pursuant to a hearing on April 16, 2013. In that hearing, Hearing Officer Sullivan stated that her October 15, 2010, ruling was res \9Judicata because CSS had never appealed that ruling.
DCFS-CSE contends that because CSS was not á party at the time the ruling was made, the ruling was null for the reasons argued in assignments of errors one and two.
We agree that the October 15, 2010, judgment was a recommended judgment, not a judgment, except for the exceptions granted. The record indicates that the petition was amended and California was served. Furthermore, the record indicates that Glen Brandell contacted the court on the re-set hearing date and obtained a continuance. Although no hearing was held due to the “nunc pro tunc” judgment which was later nullified, our finding that the 1993 judgment superseded the California support order renders this assignment moot.
By its fourth assignment of error, DCFS-CSE argues that the trial court erred by not fixing the arrearage. In this assignment, DCFS-CSE argues that under Louisiana’s choice of law provision in Children’s Code art. 1306.4, “the law of the issuing state governs the nature, extent, amount and duration of current payments and other obligations of support and the payment of arrears under the order.”
DCFS-CSE contends that California has set the arrears in this case five times from 1996 to 2008. It contends that all parties, including Mr. Hampton, were aware of the California arrearage (although Hampton testified he knew nothing about it). California does not have a prescriptive period for collecting arrears, and under URESA, which was in effect at the time of the support order, a support obli-gor could be subject to enforcement |aiof two conflicting state orders.
Accordingly, it contends the hearing officer’s October 15, 2010, finding that California made no effort to enforce the arrear-age during the 13 years it collected a reduced judgment, was incorrect. We do not agree. Based on our review of the record, it appears that the arrears that were set arose from Hampton’s nonpayment of his support obligations under the *187 1993 judgmént.[15]
In its fifth assignment of error, DCFS-CSE alleges that the trial court erred in suspending the income assignments by the State of California since California was legally obligated to collect the child support payments for Hampton’s former wife, Joycelyn Gordon.
La. R.S. 46.236.8 and Children’s Code article 1305.1 permit an income assignment order issued in another state to be sent to the employer under the income withholding law of Louisiana without filing a petition or registering the order in Louisiana. DCFS-CSE claims that the October 15, 2010, ruling that suspended the income assignment pending further orders was not a final judgment and there was no other hearing on the matter.
This assignment is without merit. The judgment on April 8, 2011, permanently enjoined the income assignment based on the judgment “nunc pro tunc” which inserted language into Judge Boddie’s judgment stated that it superseded the California support order. However, the “nunc pro tunc” judgment was later nullified. Subsequently, Hearing Officer Sullivan ruled | g2that the issue was res judicata anyway, because CSS never appealed the October 15,2010, ruling.
Since we have determined that Judge Boddie’s 1993 judgment did supersede the California support order, irrespective of the “nunc pro tunc” judgment, there is no error in the judgment.
In its sixth assignment of error, DCFS-CSE alleges that the district court erred in denying its motion for new trial. Judge Rambo based his ruling in part on the fact that CSS has never appealed the October 15, 2010, recommendations nor Judge Bod-die’s ruling. DCFS-CSE contends that CSS made an effort to secure counsel to represent its interest in opposing the October 15, 2010, recommendations. DCFS-CSE urges.that CSS simply could not find any Louisiana attorney to represent it.
Although the hearing on ■ Hampton’s amended petition to enjoin the income assignment was scheduled for April 8, 2011, DCFS-CSE contends that hearing was cancelled because of the April 5, 2011, judgment “nunc pro tunc” obviated the need for a hearing on April 8,2011, since it was a foregone conclusion that Judge Bod-die’s judgment now superseded the California judgment. However, since the “nunc pro tunc” judgment was later nullified, it argues it is entitled to a new trial on the issue.
As previously stated, although the October 15, 2010, finding was a recommendation, which later became a de facto ruling of the court, our determination that the 1993 judgment superseded the California order renders that issue moot.
By assignment of error number seven,, DCFS-CSE argues that the | ^district court erred in finding that CSS acquiesced in the reduced amount of child support pursuant to La. C.C.P. art. 2003.
DCFS-CSE , contends that- the law in effect at the time Judge Boddie made his ruling provided that a state could modify a support award .made in another state, but that such modification did not nullify, the other state’s order unless specifically so provided by the court. See La. Qhildren’s Code Art. 1333 (1996). The article further provided that Hampton’s reduced payments would be credited to the California judgments, which they were. These were the URESA rules in effect at the time. *188 DCFS-CSE contends that CSS was merely following the law, not acquiescing.
As we determined above, while Judge Boddie’s judgment did not expressly say that his judgment superseded'the California judgment, we have determined that his judgment superseded the California judgment because the assistant district attorney acted on behalf of California when it offered to reduce the support award, and the transcript of the hearing indicates that Judge Boddie intended that' his judgment would replace ■ the California support award.
By assignment of error. number 8, DCFS-CSE alleges that the district court erred by not ruling that the November 5, 2018, judgment was clearly contrary to the law and evidence and therefore entitling it to a new trial under La. C.C.P. art. 1972(1). It cites State v. Watkins, supra.
In State v. Watkins, supra, the supreme court reversed this court’s judgment at State v. Watkins, 42,060 (La.App. 2 Cir. 5/9/07), 957 So.2d 340, writ granted, 2007-1487 (La.10/12/07), 966 So.2d 535, which held | i>4that res judicata barred California from collecting a $60,000 arrearage (mostly interest) from a 1978 child support judgment. Louisiana (Caddo Parish) registered the California URESA request and collected the obligor’s monthly payments (which were the same- as the California payments, but it limited the arrearage to $5,000i dixe to Louisiana’s prescriptive period). After the obligor paid the entire amount, Louisiana closed its case. California then'initiated a direct income assignment against the obligor to collect its own arrearage calculation with' interest which had grown to $60,000. In reversing this court, the supreme court held that res judicata is not a defense to an enforcement "action under URESA because the prior California court order remains valid and enforceable in spite of the later Louisiana order.
The facts of this case can be distinguished from those in Watkins. As previously noted, the assistant district attorney, acting on behalf of CSS, offered to reduce the support order to $103 per month. Hampton accepted that offer and the court signed a consent judgment to that effect. No hearing was held and California did not contest the judgment. Although the judgment does not expressly state that it supersedes the California support order, the other factors considered above support this conclusion.
Accordingly, we find no error warranting a new trial.
CONCLUSION
For the foregoing reasons, the November 5, 2013, judgment is affirmed.
AFFIRMED.

. Drafted by the National Conference of Commissions on Uniform State Laws, the purpose of UIFSA is to expedite interstate and intrastate proceedings involving child support or spousal support. UIFSA replaced and superseded URESA ("Uniform Reciprocal Enforcement Support Act”) in 1996, Louisiana enacted UIFSA in the Children's Code under Articles 1301,1 through 1308.2, effective January 1, 1996. -

. According to the appellant, .with the accrued interest the amount due has risen to $79,758.94.

. This statute permits the income assignment to be sent directly to an employer without the need of a local court order.

. It is clear from the record that DCFS-CSE communicated with CSS regarding the hearing, and CSS wanted DCFS-CSE to represent it at this hearing on the- rule to show cause. DCFS-CSE took the position that it could not represent CSS without a new UIFSA registration, since it had closed its file on Hámpton under the previous URESA registered support order. A request to register a UIFSA support order to set arrearage was received on April 1, 2011, the same day DCFS-CSE received notice of the "nunc pro tunc” rule hearing.

. There is a reference in the record by Hampton’s counsel regarding a "private hearing” on that date; however, we think that it is likely that the hearing officer informed CSS of the "nunc pro tunc” judgment and her intention to grant the injunction on that basis.

. The text of the October 15, 2010 proposed judgment is in the record. This recommended ruling was made prior to the “nunc pro tunc” judgment that was later nullified. The ’hearing officer stated that she believed that Judge Boddie intended his judgment to supersede the California judgment.

.The record contains no certificate showing the date on which notice of the signing of the November 5, 2013, judgment was mailed, as required by La. C.C.P. art. 1913(D), and which triggers the delays for filing a motion for new trial. La. C.C.P. art. 1974.

. In this proposed judgment, Hearing Officer Sullivan stated that it was likely that J. Bod-die intended that his modification of the support award superseded the California support award.

. Because the original 1987 California support order and Judge Boddie’s 1993 judgment occurred prior to the effective date of UIFSA, January 1, 1996, URESA governs the validity of those orders and the enforceability of any orders issued prior to 1996. However, the enforceability of orders after 1995 are governed by UIFSA. See State v. Watkins, 2007-1487 (La.2/26/08), 988 So.2d 176, n. 6.

. The implication at the hearing was that the two orders were unreláted. That is, the two orders involved two other > children that Hampton had sired.

. Andrea G. Nadel, Annotation, “Construetion and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supersede or Nullify Any Other Order,” 31 A.L.R.4th 347, 352 (1984).

. Unlike the California support order, which ordered that Hampton pay $160 per month per child for two children, the Louisiana award did not specify "per child,” simply ordered Hampton to pay $103 per month. However, the California support order for the older child was due to .end in four months on October 1, 1993, when she reached 18 years old,' so that the support award was reduced by only $57 per month.

. Interestingly, the October 15, 2010, proposed judgment determined .that DCFS-CSE was not a proper party defendant, and it was dismissed from the case pursuant to its exception of improper joinder in which it asserted that Louisiana had closed its file regarding Hampton and had nó involvement in the new California collection efforts. ' Hampton was ordered to amend his petition naming the State of California as the proper defendant.

, In fact, CSS’s attorney, Glen Brandell, asked for a continuance at the January 21, 2011, hearing, and also requested that he be allowed to apppar by telephone in about six weeks. The court agreed to the request and the hearing Was rescheduled for April 8, 2011. CSS did not file any responsive pleadings to the petition to enjoin.

. The rule to set child support arrearages filed on June 13, 1996 included in its allegations the allegation that Hampton owed an arrearage of $22,823,87 from March 1, 1987 to August 31, 1992 which accrued prior to the amended order.